THE HARTFORD IRON MINING COMPANY v. THE CAMBRIA MINING COMPANY.

[See 80 Mich. 491.]

*Mining lease—Conversion of ore—Action by lessee—Damages.*

1. A lessee who has taken possession of land under a mining lease which gives him the exclusive right, during a certain number of years, to mine ore on the land, and requires him to mine not less than 7,000 tons per year, and as much more as can be reasonably mined, and to pay a royalty on the 7,000 tons, whether mined or not, and, in case of his failure to mine that amount in any given year, credits the excess of royalty paid for that year on any excess of ore mined in any succeeding year, has such a property in the unmined ore as will enable him to maintain trover for its wrongful conversion.

2. One of two lessees of adjoining parcels of mining land can maintain trover for ore mined from his parcel by the other lessee under a claim of right, based upon his location of the boundary line, which question of location is afterwards decided adversely to him; citing *Busch v. Nester*, 70 Mich. 525.[1]

3. A rule of damages which gives the plaintiff the value of the ore mined, less the actual cost of producing it and the royalty paid to the lessor, is sufficiently favorable to the defendant.

Error to Marquette. (Stone, J.) Argued May 12, 1892. Decided October 4, 1892.

---

[1] See *Wilson v. Hoffman*, 93 Mich. 72.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*A. B. Eldredge* and *Ball & Hanscom,* for appellant.

*F. O. Clark,* for plaintiff.

MONTGOMERY, J. This is an action of trover to recover the value of iron ore. The plaintiff recovered, and the defendant brings error. The case has once before been considered by this Court, and is reported in 80 Mich. 491.

The land leased to plaintiff comprised the east half of lot 5, and lots 6 and 7, in section 36, township 48 N., range 27 W. The defendant was the lessee of the west half of lot 5, and the question chiefly considered on the former appeal was whether the true dividing line was one leaving an equal acreage on either side thereof, or one equidistant from the east and west corners. This question was ruled in accordance with the contention of plaintiff, namely, that each party was entitled to occupy one-half in quantity. The defendant acquiesces in this ruling, but it alleges errors in other rulings of the court.

It is first contended that plaintiff has no title which entitles it to maintain trover, even if the defendant be held to be a wrong-doer. The rights of plaintiff in the ore are defined by a lease, or license, containing terms and provisions as follows:

" The party of the first part, for and in consideration of the rents, royalty, covenants, and agreements hereinafter mentioned and stated, on the part of the said party of the second part to be paid, observed, and performed, has licensed, and by these presents does license, the party of the second part to enter upon the following described tracts or parcels of land, * * * with the right to mine, ship, dig, and carry away therefrom such iron ore as may exist or be discovered thereon, for the term of twelve years from and after the first day of June, A. D. 1887, * * * subject to the conditions, covenants, limitations, and agree-

ments hereinafter made, as follows: Said second party shall have the exclusive right to mine iron ore on said lands, and ship and carry away the same, during the term aforesaid. The party of the second part shall not cut or use any timber growing on said lands, without the consent, in writing, of the party of the first part; but it may erect such houses and machinery as may be necessary to conduct its mining operations on said land. The right of possession of said lands not occupied by said second party for mining purposes shall always remain in the said first party, its successors and assigns, who shall have the same right to use and occupy such land as though these presents were not executed, whenever the same does not manifestly or evidently interfere with the mining operations of said second party. Said second party shall pay a royalty of 50 cents to said first party, its successors and assigns, on each and every gross ton of iron ore mined on said land during the term, and shall diligently and constantly prosecute the mining operations during said term. * * * Said second party shall mine not less than 7,000 gross tons each year during said term, *and so much more as can be reasonably mined* on said land; and said second party shall pay a royalty on at least 7,000 gross tons of iron ore each year, payable monthly, *pro rata,* during the shipping season, no matter whether mined or not. In case said second party does not mine 7,000 gross tons of iron ore in any one year, and pays royalty as aforesaid, it shall be credited for the royalty so paid on ore mined on the excess mined over 7,000 tons in any succeeding year. * * * Said second party shall, in due season, pay, or cause to be paid, all taxes and assessments, general and special, ordinary and extraordinary, that may be assessed or levied on said land or premises, * * * and at the expiration of said term of twelve years the said second party will peaceably and quietly leave, surrender, and yield up the possession of said lands to said first party, its successors or assigns."

The instrument contains a further provision for re-entry in case of failure to perform on the part of the second party, and a covenant that,—

" After the fulfillment of the covenants and conditions of this lease by the party of the second part, and on the expiration of this lease, he may remove from the said

premises all houses erected by him on the land, or machinery put upon the same."

The defendant's contention is that the plaintiff is, under this instrument, a mere licensee, and that a licensee who is privileged by his license to mine ore has no such beneficial interest or title in the ore before it is severed from the realty as to entitle him to bring trover against one who enters upon the land and mines it without his permission. Defendant's counsel cite, as sustaining this proposition, *Grubb v. Bayard,* 2 Wall. Jr. 81; *Brandt v. McKeever,* 18 Penn. St. 70; *Iron Co. v. Wright,* 32 N. J. Eq. 248; *Baker v. Hart,* 123 N. Y. 470 (25 N. E. Rep. 948); *Gillerson v. Mansur,* 45 Me. 25.

In *Grubb v. Bayard,* it was held that, under the general terms of the license in question, the licensee was privileged to enter upon lands and mine the ore or not, as he saw fit. The words employed were "full and free liberty to dig all metals and minerals throughout the demised lands." It was held that this language did not exclude the owner of the soil from mining, and that, therefore, no title vested in the licensee in the ore until actually mined.

In *Brandt v. McKeever* it was held that a statute which gave the right to dig and mine for iron, coal, limestone, sand and gravel, fire-clay, and other minerals, did not grant a right to the soil, but a right to mine and dig in it, and to take to the use of the warrantee the product of his digging and mining, and everything he should have made his own by the impress of his labor, but nothing else; that a grant of the right to dig and mine conveys no more than a license to take and appropriate the minerals beneath the soil, but vests no property in them until they are taken and appropriated; that under the statute in question the plaintiff had no better right than had the defendant to the sand deposited, or, rather, that the right to it was exclusively in the state.

In *Iron Co. v. Wright,* it was said:

"A license may confer either a sole or exclusive right, or simply a right in common. If it simply confers a right to dig and take ore or to work a mine, it is not exclusive, and the licensor may himself take ore from the same land or mine, or license others to do so. And when it authorizes the licensee to dig and carry away all the ore to be found in certain lands, it does not confer an exclusive right. If it be merely a license, and no estate or property in the land is passed, the licensee acquires no title to the ore until he has severed it."

And it was said, as to the defendant's right in that case:

"His license was unexecuted; he obtained it without paying a consideration for it, and had done nothing under it which rendered its revocation, either as a matter of law or conscience, unfair or unjust. If his license invested him with no estate or interest in the lands, and no equities have been raised in his favor by the expenditure of money or labor under it, it is difficult to understand by force of what legal or equitable rule it can be said to possess the least efficacy after the person who granted it has ceased to have any interest in, or dominion over, the lands upon which it was intended to operate."

In *Baker v. Hart* it was held that the plaintiffs, under a grant to them of the sole and exclusive right of entering in and upon the lands for the purpose of "quarrying, cutting, crushing, and removing stone for the term of ten years, but not to hold possession of any part of said lands for any other purposes," acquired no such right in the unquarried stone as entitled them to maintain trover against a wrong-doer. It was said in that case, however, that "a right to take all the stone on the land without restriction in time or quantity might readily be held to transfer its ownership," and that, under the facts in the case under consideration, undoubtedly the act of defendants was an infringement of their rights, for which they could recover such damages as they in fact sustained.

The case of *Gillerson v. Mansur* is not in point. Plaintiff in that case rested his claim of title upon the permit to take the timber which defendants had appropriated, within a specified time, and not after, and upon certain conditions. The timber had not been cut by the plaintiff, and, by the terms of the permit, the original owner was to have the original and complete ownership and control of all timber to be cut upon the land, and it was further stated as a fact that it did not appear that the conditions by which the timber could be cut were ever fulfilled in any respect. And it was said:

"Nothing is exhibited in the case that Gilman had not the title and right of possession exclusively to the property replevied, and the issue that the plaintiff had no right of possession therein must have been for the defendants on the evidence introduced."

The cases above referred to which bear upon the question of license sustain the proposition that a naked licensee who has not reduced the property to possession has not such a right in the property as enables him to maintain trover, but we think the present case is clearly distinguishable from those referred to. It further appeared, in the present case, that the plaintiff was actually given possession for the purposes of mining. It was, by the terms of its lease, granted the exclusive right to mine during the period of 12 years; and, furthermore, was required by the terms of its contract to mine not less than 7,000 tons per year, and to pay for so much, whether mined or not, and also was required to mine so much more as could be reasonably mined on such land. In such a case it is a contradiction of terms to say that one who has a right to mine ore, and who is bound to take out a given amount of ore in a stated time, and who is likewise bound to pay for it, whether mined or not, and who is entitled to possession for that purpose, and who has taken possession for that

purpose, has no property in the ore which is actually mined by a wrong-doer. If it be held that he has not, it must be because he has no interest in the ore that lies in the ground. But he has an interest; he has obligated himself that this ore, to the extent at least of 7,000 tons per year, and so much more as can be reasonably mined, shall be taken out of the ground, and that he shall pay to the licensor a royalty upon that amount of ore, whether mined or not, and, if not mined, he has an interest to the extent of the royalty in the unmined ore, and receives credit for that the following year. This right to mine during the 12 years is irrevocable, and no ore could be taken out without damaging the plaintiff to the extent of the difference between the value of the ore and the cost of production. The language of the lease does not leave it doubtful whether the right is exclusive of the lessor. The rights reserved to the lessor are only such as shall not interfere with the possession of the lands by the plaintiff. Neither the lessor nor a wrong-doer had the right to enter upon the lands for the purpose of mining. We think the circuit judge was right in holding that, under these circumstances, the plaintiff had such title to this ore as entitled it to maintain this action.

But it is contended that, during the time that the main part of the ore in question was taken out, the defendant was in the actual possession of the land under a claim of right, and that trover cannot, therefore, be maintained. But the only possession of this particular strip in question which defendant had was such as enabled it to mine and convert the property in question. We think that, under these circumstances, trover will lie. *Busch v. Nester*, 70 Mich. 525.

It is also contended that the plaintiff was estopped from maintaining this action by the acts of its officers, but a careful examination of the record satisfies us that the question is not materially different from that presented on the

former hearing, when this question was determined adversely to the contention of defendant.

The rule of damages adopted was sufficiently favorable to the defendant. The plaintiff was allowed to recover the value of the ore mined, less the actual cost of producing it, and less the royalty which was paid by defendant to the owner.

It was competent to show by the witness Metheral what it would cost per ton to mine the ore. He had shown himself competent to express an opinion upon this subject.

We have considered the other points presented by the record, but discover no error, and the judgment will be affirmed, with costs.

MORSE, C. J., McGRATH and LONG, JJ., concurred.

GRANT, J., took no part in the decision, for the reason that he was the circuit judge before whom the case was first tried.