**SECURITY–FIRST NAT. BANK OF LOS ANGELES v. WELCH, Former Collector of Internal Revenue.**
No. 8260.

Circuit Court of Appeals, Ninth Circuit.
Sept. 13, 1937.

Rehearing Denied Oct. 25, 1937.

358

George Bouchard and Dana Latham, both of Los Angeles, Cal., for appellant.

Robert H. Jackson, Asst. Atty. Gen., J. Louis Monarch, Harry Marselli, and Clarence D. Dawson, Sp. Assts. to the Atty. Gen., and Peirson M. Hall, U. S. Atty., E. H. Mitchell, Sp. Asst. to the U. S. Atty., and Eugene Harpole, Sp. Atty., U. S. Treasury Dept., all of Los Angeles, Cal., for appellee.

Before GARRECHT and HANEY, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

Reversal is sought of a judgment in favor of appellee, denying recovery of a tax claimed to have been erroneously paid on appellant's net income for the year 1924.

Appellant, as trustee, received distribution of the residuary estate of one Kleinmeyer, November 15, 1916, in which was included the lands, the basis of this controversy, and which will be referred to as leased land. The fair market value, on that date, of the leased land was $50,997.69. This land had no known oil value on said date.

The leased land was located in the so-called "Torrance" oil field. Discovery of oil in said field was by a well drilled and "brought in" during the year 1921. On June 30, 1924, appellant leased the said land to a lessee for a term of years to be exploited for gas, oil, etc. The lessee agreed to "commence operations preparatory to the drilling of at least 12 wells" upon said land within 15 days, and to "commence actual drilling of each of the wells within 60 days from the date of the lease, and to drill other wells until a total of 85 wells were completed." The lessee agreed to pay cash royalties on petroleum produced, and a cash bonus of $150,000.

The bonus was paid on July 1, 1924. The first well on the leased land which had a commercially productive basis was "brought in" on September 17, 1924. On December 31, 1924, there were on the leased land 18 completed wells, and others being drilled.

Appellant, as trustee, filed an income tax return for the said trust estate for the year 1924, but did not include as income the bonus payment in the sum of $150,000. The Commissioner of Internal Revenue audited such return, and determined the deficiency in appellant's tax for that year by adjusting the gross income to include the amount of the bonus, but "refused to allow as a deduction from the gross income any amount as depletion on said bonus." Thereupon appellant paid the tax to appellee, and filed a claim for refund which was denied on June 19, 1931, by the Commissioner.

On June 17, 1933, appellant began this action to recover the sum of $15,330.65 of the tax theretofore paid on the ground that it was entitled to a deduction from gross income "for depletion upon said bonus." Upon facts which were thus stipulated the trial court concluded as a matter of law that appellant was entitled to no allowance or deduction "for depletion of said bonus." Judgment was accordingly entered, and this appeal followed.

The Revenue Act of 1924, § 214 (43 Stat. 269, 270), provided:

"(a) In computing net income there shall be allowed as deductions: * * *

"(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

Under section 204(c), 43 Stat. 258–260, "the cost or value" in computing depletion deductions for the *basic date* and this is specified to be the same as provided in the subdivision (a) or (b). Division (a) provides that "if the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition," except as noted in subdivision (c).

Subdivision (c) follows: "that in the case of mines, oil and gas wells, discovered by the taxpayer after February 28, 1913, and not acquired as the result of purchase of a *proven* tract or lease, where the fair market value of the property is materially disproportionate to the cost, the *basis* for

depletion shall be the fair market value of the *property* at the date of *discovery,* or within thirty days thereafter."

Article 222 (1) of Regulations 45 provides: "For the purpose of Sec. 204 (c) of the Revenue Act of 1924, an oil or gas well may be said to be *discovered* when there is either a natural exposure of oil or gas (open to public view, subject to public inspection), (Insert supplied) or a drilling that discloses the actual and physical presence of oil or gas in quantities sufficient to justify commercial exploitation."

It is explicitly stated that discovery must be by *drilling* that *discloses* the *actual* and *physical presence* of *oil* or *gas,* or "a *natural* exposure of oil or gas." That is oil set out to public view, viz., exhibited to public inspection (Webster Dic.) on the land.

The same article: "(3) Property which may be valued after discovery is the 'well'. For the purposes of these sections the 'well' is the drill hole, the surface necessary, for the drilling and operation of the 'well', the oil or gas content * * * in which the *discovery* was made by the drilling and from which the production is drawn to the *limit* of the taxpayer's *private boundary* lines, but not beyond the *limits* of the *proven* areas as *heretofore* provided."

Thus by the provisions of the law and regulations, the *discovery* "well" is at the *drill hole,* in which the discovery was made by the drilling. The right of property on the surface *extends* (from the drill hole on the *taxpayer's* land, not the "drill hole" on an *adjoining owner's* land) *to the limits of the taxpayer's boundary line.* This confirms that *discovery* of *actual* and *physical presence* of oil (article 222 (1), Regulations 45, supra) must be on the taxpayer's land and that *geological inferences* or *deductions,* or known physical conditions or *proven* land of *strangers* immediately adjoining have no *controlling* force.

■ The essential which inaugurates the right to royalties, prospective production, and the essential which vivified the right, retrospective deductions, on bonus paid, is one simultaneous event, and that is *discovery* of the *actual* and *physical presence* of oil on the *taxpayer's* land (article 222 (1), Regulations 45, supra). Discovery of oil on the taxpayer's land was not made until September 17, 1934, *79* days after execution of the lease, and 49 days beyond the time provided by the law, and which is a part of the lease; and is controlling.

■ The Congress has the power by statute, or by authorized regulations, to say what shall constitute discovery of oil and to fix the tax liability, and yardstick for reasonable deductions for capital depreciation; and to provide applicable rules and regulations to bring the provisions to fruition for the enjoyment of the benefaction thus conferred. These regulations made pursuant to act of the Congress have the force of law. Bonus depletion for capital deduction in not a natural right, nor is it a vested right. It is a gift by the Congress, a benefaction which the law affords. The court may not add to the clear provision of the act "or such drilling on or near the land in question as discloses the *actual* physical presence of oil. * * *" The Commissioner, with the Secretary's approval, may do so, but not the court.

The law and regulations need no interpretation. They are clear and easily understood, and even the man on the street could not err, but can readily understand. To hold otherwise, the court would be chiseling and whittling away vital parts of the revenue law, and by judicial legislation usurping the power of the Congress, and authorized act of the Commissioner and Secretary of the Treasury, and defeat the plain provisions of the statute and regulations.

■ The court is not concerned with the reason for, or wisdom of, the law. Bonus and royalties are both consideration for the lease. Royalties are prospective, and bonus depletion retrospective, and to inaugurate the one and vivify the other actual physical presence of oil must be found on the land, and valuation limited to the prescribed time for the bonus, 30 days from discovery of the oil. It is not of the court's concern why payment of the bonus by the lessee to the lessor to be retained by him regardless of the production of any oil is any more to be taxed as capital gain than royalties which are measured by actual production.

■■ The court may not amend or repeal the law. It is an elementary principle that courts will not attempt to question the wisdom of the legislative body in adopting or changing the government's economic philosophy to what it believes to be for the common good, or by its authority adopting or changing regulations to carry for-

ward applicable principles. The Congress fixes the principle and policies of the law; and that the legislative power is supreme is clearly shown by analogy in Joseph Triner, Corp. v. McNeil, 363 Ill. 559, 2 N.E.(2d) 929, 104 A.L.R. 1435; Nebbia v. N.Y., 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469. If the law is "illogical, or unreasonable," or unwise, the remedy is with the Congress to amend or repeal the law, and the Commissioner and Secretary of the Treasury to amend the rules and regulations, but the court may not remedy it by judicial legislative usurpation.

The judgment is affirmed.

(All italics and parenthetical insertions supplied.)

HANEY, Circuit Judge (dissenting).

I dissent. Appellant (referring to it and its predecessor as such) was named trustee of the residuary estate of one Kleinmeyer in his will, and received distribution of the residuary estate on November 15, 1916, in which was included certain lands, hereinafter referred to as the leased land. The fair market value of the leased land was $50,997.69 on that date, but the "property was an unproven tract of land and had no known oil value at said date."

The leased land was located in the so-called "Torrance" oil field, discovery of oil in which was by a well drilled and brought in during the year 1921. On June 30, 1924 the leased land "was proven oil bearing property as a result of its known geological condition at that time and production from oil wells on property owned by other persons immediately adjoining it."

On the date last mentioned, appellee leased the "leased land" to a lessee for a term of "twenty years from the date thereof and so long thereafter as petroleum and natural gas shall be produced therefrom in paying quantities." The lessee agreed to "commence operations preparatory to the drilling of at least twelve wells" upon the land within 15 days, and to "commence actual drilling of each" of the wells within 60 days from the date of the lease, and to drill other wells until a total of 85 were completed. The lessee agreed to pay cash royalties on petroleum produced, and a cash bonus of $150,000.

The bonus was paid on July 1, 1924. The lessee performed its covenants in the lease with respect to the drilling of the wells. The first well on the leased land which had a commercially productive basis was brought in on September 17, 1924. On December 31, 1924, there were on the leased land 18 completed wells, and others were being drilled.

Appellant as trustee filed an income tax return for the trust estate for the year 1924, but did not include as income the bonus payment in the sum of $150,000. The Commissioner of Internal Revenue audited such return and determined a deficiency in appellant's tax for that year, by adjusting the gross income to include the amount of the bonus, but "refused to allow as a deduction from gross income any amount as depletion on said bonus." Thereafter appellant paid the tax to appellee, and filed a claim for refund which was denied on June 19, 1931, by the Commissioner.

On June 17, 1933, appellant filed an action to recover the sum of $15,330.65 of the tax theretofore paid, on the ground that it was entitled to a deduction from gross income "for depletion upon said bonus." Upon the facts, which were stipulated, the trial court concluded as a matter of law that appellant was "entitled to no allowance or deduction for depletion of said bonus." Judgment was entered in favor of appellee, accordingly, and this appeal was taken therefrom.

Inasmuch as a bonus payment "is not proceeds from the sale of property, but payment in advance for oil and gas to be extracted," it is therefore gross income. Herring v. Commissioner, 293 U.S. 322, 324, 55 S.Ct. 179, 79 L.Ed. 389. The Revenue Act of 1924, § 214, 43 Stat. 269, 270, provides:

"(a) In computing net income there shall be allowed as deductions: * * *

"(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

A taxpayer being the recipient of a bonus is therefore allowed a depletion deduction. Burnet v. Harmel, 287 U.S. 103, 111, 53 S.Ct. 74, 77 L.Ed. 199; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489. Such depletion

deduction allowable in respect of the bonus is "an amount equal to that proportion of the cost or value of the property on the basic date which the amount of the bonus bears to the sum of the bonus and the royalties expected to be received." Article 215, Regulations 45, as amended November 13, 1926, by Treasury Decision 3938, V-2, C.B. 117, which was held reasonable within a statute similar to the one in question, in Murphy Oil Co. v. Burnet, supra.

Under this provision the mechanics of computing depletion deduction for the bonus is as follows: The amount of the bonus is divided by the total amount expected to be received from both bonus and royalties, thus giving as the quotient what the percentage of the total the bonus is; the "cost or value of the property on the basic date" is multiplied by the percentage thus obtained, and the product is the amount deductible from the bonus payment as depletion in computing net income.

It is necessary in accordance with that computation to determine the "cost or value of the property on the basic date." Under section 204 (c) this "cost or value," in computing depletion deductions, is specified to be the same as provided in preceding subdivision (a) or (b), but section 204 (c), 43 Stat. 258–260, provides an exception hereinafter mentioned. Subdivision (a) (4) provides that "If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition." Appellant obtained the leased land by a transfer in trust on November 15, 1916, at which time the fair market value of the property was $50,997.69, which figure represents no oil value whatever. In subdivision (c) the exception mentioned is "that in the case of mines, oil and gas wells, discovered by the taxpayer after February 28, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter."

The controversy here centers around the meaning of the words "property" and "discovery" as used in the following clause in section 204 (c): "the basis for depletion shall be the fair market value of the *property* at the *date of discovery* or within thirty days thereafter." (Italics supplied.)

With respect to the word "discovery" it is provided in article 222 (1) of Regulations 45: "For the purpose of section 204 (c) of the Revenue Act of 1924, an oil or gas well may be said to be discovered when there is either a natural exposure of oil or gas, or a drilling that discloses the actual and physical presence of oil or gas in quantities sufficient to justify commercial exploitation."

With respect to the word "property" the same article provides: "(3) The 'property' which may be valued after discovery is the 'well.' For the purposes of these sections the 'well' is the drill hole, the surface necessary for the drilling and operation of the well, the oil or gas content of the particular sand, zone, or reservoir (limestone, breccia, crevice, etc.) in which the discovery was made by the drilling, and from which the production is drawn, to the limit of the taxpayer's private bounding lines, but not beyond the limits of the proven area as heretofore provided."

Appellee contends that, since there was no "discovery" as thus defined until September 17, 1924 (the date the first well was brought in), there was no "property" as thus defined (an oil or gas well) when the bonus was paid on the prior July 1st; that therefore the exception in section 204 (c) has no application to the bonus payment; that, since section 204 (c) has no application, the basic date would be the one then existing, which would be the date the transfer in trust was made; that on that date the "cost or value of the property" was nil, which, multiplied by the percentage obtained pursuant to the statute, would give a product of nothing, which would be the deduction for depletion permitted.

The statute (section 204 (c) may be taken to mean either (1) that it is mines or oil and gas *wells* which are discovered; or (2) that it is minerals, or oil and gas which are discovered. Appellee has taken the first. The meaning of the word "discovery" itself goes far in determining what the statute means. It implies the bringing to light of something previously unknown. Article 222 (1) of the regulations says that there is discovery of an oil or gas well when there is either a natural exposure of oil or gas, or a disclosure of "the actual and physical presence of oil or gas" by drilling. Thus it is shown by the regulation that it is the mineral which is discovered, and not the hole in the ground,

through which the oil is extracted. When is discovery of the mineral made? The regulation says, when there is a natural exposure of the oil and gas, or by "a drilling that discloses the actual and physical presence" of it. Nothing in that regulation provides that a well must be drilled on the particular property leased. Drilling on adjacent lands might disclose oil. An existing well on the leased lands here in question is not a condition to the depletion. Herring v. Commissioner, supra, 293 U.S. 322, at page 325, 55 S.Ct. 179, 79 L.Ed. 389.

It is illogical and unreasonable to hold that there is no discovery of oil on lands until the presence of such oil becomes known by the drilling of a well on such lands. Suppose a small lot is surrounded by wells all near the boundary of the small lot; that the geological formation of the small lot is the same as that of the land surrounding it; and that all experts agree that there is oil on the small lot. It is absurd to say that there has been no discovery of oil on the small lot.

I therefore believe that "the date of discovery" as used in section 204 (c) means the date when the presence of oil became known, either by natural exposure, or by such drilling on or near the lands in question, as discloses the actual and physical presence of oil or gas on the lands in question.

In the instant case, it was stipulated that the leased land "was proven oil bearing property". on the date the lease was made. Therefore the date of discovery was on or prior to that date.

Finally, article 222 (3) of the regulations defines "property," as used in section 204 (c) of the act, to be the "well." It also defines the "well" to be the drill hole, a portion of the surface of the land, and the oil and gas content within certain limits. If this regulation means that there is "property" as used in the statute, only when there is a drilled well, then it is obvious that appellant had no property. I do not believe such a meaning can be given to the regulation, but, if it does condition ownership of such property on the existence of a well, it is contrary to Herring v. Commissioner, supra. I believe such regulation means that "property" includes, as used in section 204 (c) of the act, all the things mentioned therein, or it may mean the oil and gas content alone.

I conclude that appellant is entitled to a depletion deduction.