ATLAS MILLING CO. v. JONES,
Collector of Internal Revenue.

No. 2053.

Circuit Court of Appeals, Tenth Circuit.

June 5, 1940.

On Rehearing Oct. 14, 1940.

Paul E. Bradley, of Joplin, Mo. (Chas. M. Grayston, of Joplin, Mo., on the brief), for appellant.

Louise Foster, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for appellee.

Tom F. Carey, Jr., and Martha Lynne Carey, amici curiae.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

During the years 1917 to 1925, inclusive, the St. Louis Smelting and Refining Company carried on lead and zinc mining operations on a tract of land in Ottawa County, Oklahoma. The St. Louis Company carried on underground mining, brought mineral-bearing rock to the surface, crushed it to approximately one-half inch in size, and then ran it over gravity concentration machines which separated the lead and zinc concentrates from the rock. The residue, known as tailings, aggregating approximately three-quarter of a million tons, was deposited on the land. After the St. Louis Company ceased its operations, an oil flotation process was perfected, through the use of which it was possible to remill and retreat the tailings and recover additional mineral values therefrom at a profit.

On July 5, 1933, Kansas Explorations, Inc.,[1] the owner of a life estate in the land and the tailings deposited thereon, entered into a contract with the Atlas Milling Company,[2] under which the latter was given the right to enter upon the land and rerun, reclean, and retreat the tailings deposited thereon. The contract provided that payments for concentrates recovered by Atlas from the tailings should be paid to Kansas and that it should pay 75 per cent thereof to Atlas and retain the remaining 25 per cent as rent or royalty.

On July 28, 1933, Atlas entered into a contract with Paul D. Dardenne, owner of the remainder interest in the land, by which Atlas was given the right to remill the tailings. It reserved a royalty to Dardenne of five per cent of the amounts received for concentrates recovered and sold.

During the taxable year 1933, Atlas received from the sale of concentrates recovered from the tailings the sum of $43,579.84, out of which it paid royalties

---

[1] Hereinafter referred to as Kansas.  [2] Hereinafter referred to as Atlas.

amounting to $10,782.18, leaving net to it $32,797.66. In its income tax return for the year 1933, Atlas claimed a depletion allowance on the basis of 15 per cent of $32,797.66, limited to 50 per cent of its net income of $2,124.11, resulting in a depletion deduction of $1,062.06. Atlas reported and paid as income tax for the year 1933 the sum of $146.03 and reported that there was no excess profits tax. The Commissioner allowed $421.08 for depletion of the lease, denied the balance of the claim for depletion and proposed a deficiency assessment of $596.89. Atlas paid under protest, the assessment, which, together with interest and penalties, aggregated $666.81, and filed a claim for refund of $390.83. The claim for refund was denied and Atlas brought this suit to recover the amount claimed. From a judgment for the Collector, Atlas has appealed.

The sole issue presented is whether Atlas is entitled to a depletion allowance under § 23 of the Revenue Act of 1932, 47 Stat. 169, 181, 26 U.S.C.A.Int.Rev.Code, § 23 (m), which in part reads:

"In computing net income there shall be allowed as deductions: * * *

"(l) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, * * *."

■ An allowance for depletion on account of exhaustion of a mine is an act of grace. It is allowable only where Congress has made provision therefor. One who claims it must bring himself within the provisions of § 23, supra.[3]

■ A "mine" is an excavation in the earth from which ores, coal, or other mineral substances are removed by digging or other mining methods. In its broader sense it denotes the vein, lode, or deposit of minerals.[4] Mining connotes the removal of minerals from a natural deposit. It does not embrace the re-working of mineral dumps artificially deposited from the residue remaining after the ore has been milled and concentrates removed therefrom. South Utah Mines & Smelters v. Beaver County, 262 U.S. 325, 332, 43 S.Ct. 577, 579, 67 L.Ed. 1004. In the case last cited the court said:

"The tailings, severed and removed from the mining claims, changed in character, placed on other and separate lands and having an ascertained and adjudicated value of their own, in our opinion, constituted a unit of property entirely apart from the mine from which they had been taken. See Forbes v. Gracey, 94 U.S. 762, 765, 24 L.Ed. 313."

■ Ores when severed from their natural deposit become personal property.[5] Trover and conversion will lie for their wrongful taking.[6]

While tailings deposited on the surface of land may become appurtenant to the land,[7] they in no true sense become a mine.

■ We are of the opinion that the word "mines" as used in § 23, supra, is limited to natural deposits and does not include a tailings dump deposited on the surface of land, consisting of the residue of ore that has been severed and milled.

It follows that Atlas was not entitled to a depletion allowance under § 23, supra.

The judgment is affirmed.

---

[3] Helvering v. Mountain Producers Corporation, 303 U.S. 376, 381, 382, 58 S.Ct. 623, 82 L.Ed. 907; Security-First Nat. Bank of Los Angeles v. Welch, 9 Cir., 92 F.2d 357, 359.

[4] Webster's New International Dictionary, 2d Ed., p. 1563;

2 Bouv. Law Dict., Rawle's Third Revision, p. 2214;

Lindley on Mines, 3d Ed., Vol. 1, §§ 88, 89;

Marvel v. Merritt, 116 U.S. 11, 12, 6 S.Ct. 207, 29 L.Ed. 550;

Northern Pac. R. Co. v. Mjelde, 48 Mont. 287, 137 P. 386, 389;

J. M. Guffey Petroleum Co. v. Murrel, 127 La. 466, 53 So. 705, 711;

Sloss-Sheffield Steel & Iron Co. v. Bearden, 199 Ala. 132, 74 So. 230, 231.

[5] Forbes v. Gracey, 94 U.S. 762, 765, 766, 24 L.Ed. 313;

South Utah Mines & Smelters v. Beaver County, 262 U.S. 325, 332, 43 S.Ct. 577, 67 L.Ed. 1004.

Cf. Manson v. Dayton, 8 Cir., 153 F. 258, 263.

[6] Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U.S. 428, 434, 12 S.Ct. 877, 36 L.Ed. 762;

Omaha & Grant S. & R. Co. v. Tabor, 13 Colo. 41, 21 P. 925, 930, 5 L.R.A. 236, 16 Am.St.Rep. 185;

Hartford Iron Min. Co. v. Cambria Min. Co., 93 Mich. 90, 53 N.W. 4, 32 Am.St.Rep. 488;

Ivy Coal & Coke Co. v. Alabama Coal & Coke Co., 135 Ala. 579, 33 So. 547, 93 Am.St.Rep. 46.

[7] Manson v. Dayton, supra.

## On Rehearing.

In its petition for rehearing, the Atlas Milling Company [1] contends that in our former opinion we placed too narrow a construction upon the phrase, "mines, oil and gas wells, other natural deposits" in § 23(l) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 23(m), and cite in support of its contention Herring v. Commissioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389.

■ The provisions for depletion found in the Revenue Acts since 1913 recognize that mineral deposits are wasting assets and that the taxpayer must look to the income derived therefrom for a return of his capital investment. They are intended to compensate the owner of any economic interest in the minerals in place, for the loss of capital resulting from the exhaustion of the minerals. United States v. Ludey, 274 U.S. 295, 302, 47 S.Ct. 608, 71 L.Ed. 1054; Palmer v. Bender, 287 U.S. 551, 556, 557, 53 S.Ct. 225, 77 L.Ed. 489.

During the years 1917 to 1925, inclusive, the minerals were severed, carried to the surface and all of the mineral content recoverable under known process was extracted from the minerals. The residue, consisting of tailings, was deposited on the surface. The minerals in place during those years were owned by the St. Louis Smelting & Refining Company and the landowner. Atlas did not then and does not now have any interest in the mine from which the minerals were extracted. The depletion of the mine took place when the minerals were severed during the years 1917 to 1925, inclusive, and the resulting loss of capital was suffered by the landowner and the lessee and not by Atlas. We are not here concerned with whether the life tenant or remainderman is entitled to a depletion allowance, nor whether, if the St. Louis Smelting & Refining Company had retained its interest in the tailings and had recovered the mineral content in the taxable year 1933, it would have been entitled to a depletion allowance. The question presented is whether, after minerals have been severed, removed from a mine and treated, leaving a residue of tailings, and a third person owning no economic interest in the mine from which the minerals were taken enters into a contract to process the tailings and to pay the life tenant a specified royalty out of the mineral values recovered for the right so to do, such third person, when he recovers mineral values from the tailings, suffers an exhaustion of a mine for which he may claim depletion.

■ We think the case is clearly distinguishable from Herring v. Commissioner, supra. In that case there was no question but that the taxpayers had an economic interest in oil and gas in place. They were the owners of a one-half interest in the land. The sole question was whether they were entitled to a depletion allowance in the year in which they received advance royalties or bonuses when no oil well had been drilled and no oil or gas had been extracted in that year. They received advance royalty out of which, under the statute, they could only obtain an allowance for depletion of the oil and gas they would suffer in the future. Here, Atlas owns no economic interest in the mine from which the minerals were severed. To entitle it to depletion we would have to hold that the tailings, not a natural deposit but ore-bearing rock artificially deposited on the surface of the ground, constitutes a mine within the meaning of § 23, supra. We are of the opinion that it may not be so regarded. The Commissioner made an allowance to Atlas for depreciation on its mill and equipment and for amortization of the costs of its lease. This clearly covers all the exhaustion of capital assets which it suffered and we adhere to the conclusion reached in our former opinion that the Commissioner rightfully denied a depletion allowance.

---

[1] Hereinafter referred to as Atlas.