*Decision will be entered under Rule 50.*

PACIFIC CEMENT & AGGREGATES, INC. (FORMERLY PACIFIC COAST AGGREGATES, INC.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66041. Filed October 23, 1958.

*Paul T. Wolf, Esq.*, for the petitioner.

*Nat F. Richardson, Esq.*, and *Edward H. Boyle, Esq.*, for the respondent.

ARUNDELL, *Judge:* The respondent determined deficiencies in income tax for the taxable years ended December 31, 1953 and 1954, in the amounts of $23,190.81 and $23,891.57, respectively.

The only issue remaining for our determination is whether petitioner is entitled to percentage depletion on certain aggregates (rock, sand, and gravel) extracted in 1953 and 1954 from the Fair Oaks property. The issue relating to the deductibility of the California franchise tax will, according to the stipulation, be settled under Rule 50.

### FINDINGS OF FACT.

Most of the facts were stipulated and are so found.

Petitioner is a corporation organized under the laws of the State of California on November 30, 1928, as Pacific Aggregates, Inc. Its name was changed to Pacific Coast Aggregates, Inc., on April 15, 1929, and then changed to its present form, Pacific Cement & Aggregates, Inc., on September 28, 1956. Its principal office is located in San Francisco, California. The returns for the periods here involved were filed with the director for the San Francisco district of California.

Petitioner, insofar as this proceeding is concerned, is engaged in the business of mining and excavating rock, sand, and gravel (aggregates) from owned or leased properties, processing such material, and selling it at wholesale and retail. Operations are conducted principally in the areas surrounding San Francisco Bay and in the San Joaquin and Sacramento Valleys in northern California.

One of the properties from which aggregates were mined by petitioner was known as the Fair Oaks property. Petitioner holds and for many years has held a lease on the aggregate-bearing lands of this property. Aggregates from this property are excavated from ancient stream deposits adjacent to the south side of the American River, southerly from the town of Folsom, in Sacramento County, California. The aggregates deposits extend several miles back from the banks of the river.

Natomas Company for many years has been in the business of dredge mining for gold and part of the property which is leased by

petitioner had been dredge mined for gold by Natomas Company prior to the inception of any lease with petitioner.

The aggregates themselves consist of smooth gravel in various sizes from three-eighths of an inch in diameter to 12-inch cobbles and sand from three-eighths of an inch in diameter down to fine sand.

The lessor of the property was Natomas Company, a corporation, and the lease under which petitioner held the property was dated September 15, 1939, succeeding a prior lease for a term of 10 years. The only changes in the lease since the date of its inception have been deletions of certain properties therefrom and a change in the royalty payable to the lessor. The lease gives to the petitioner the exclusive right and privilege of removing rock, sand, gravel, boulders, and kindred substances from the lands. The lease provided for a "minimum rental" of an annual sum payable monthly in advance on the first day of each month and, in addition to the minimum rental, a per ton royalty of from 2 to 7½ cents (depending on the selling price) of aggregates removed from the lands.

Dredge mining for gold was accomplished through the medium of a floating dredge approximately 100 feet long. A hole large enough to accommodate the dredge was dug in the earth, the dredge constructed in the hole, water let into the hole, and the dredge floated. On the front of the dredge was a bucket line which scooped up the gravel and sand. The gravel and sand were separated on the dredge. The gold was extracted from the sand, and the gravel and sand were then intermingled and dumped back into the pond. The method of dumping or stacking the sand and gravel used by Natomas Company left the land in a fairly level condition. There is no crushing or processing of the aggregates and the only change is the extraction of the gold from the sand. Petitioner's operations on the Fair Oaks property were no different from its operations on any other of its aggregates properties.

The Fair Oaks property had never been mined for aggregates by Natomas Company or any prior owner, and no aggregates were removed from the property until the operations therefor were commenced by petitioner. Natomas Company mined the property only for the purpose of extracting gold. During the period of the existing lease (and the prior lease of 10 years) petitioner has excavated and produced aggregates from the property. This is accomplished by means of a dragline which scoops up the aggregates which are then trucked to petitioner's nearby processing plant. At the plant they are washed, crushed, sorted into sizes, stockpiled, and eventually shipped.

Petitioner claimed percentage depletion on the Fair Oaks aggregates computed at 5 per cent of the gross income from the property for the calendar years 1953 and 1954 in the amounts of $33,977.89

and $35,507.39, respectively. The respondent disallowed the deductions claimed for percentage depletion and, in a statement attached to the deficiency notice, said:

It is held that no depletion deduction is allowable to you in respect to this property, inasmuch as the sand, rock and gravel recovered by you from this property was not recovered from natural deposits in which you had a depletable interest.

The aggregates taken from the Fair Oaks property in the taxable years 1953 and 1954 were from natural deposits and constituted minerals in place.

### OPINION.

Both section 23 (m) of the Internal Revenue Code of 1939 (applicable to 1953) and section 611 (a) of the Internal Revenue Code of 1954 (applicable to 1954) provide that in computing net income "[i]n the case of mines, oil and gas wells, other natural deposits, and timber" there shall be allowed as a deduction a reasonable allowance for depletion according to the peculiar conditions in each case. Both sections provide that such reasonable allowance in all cases is to be made under rules and regulations. Section 114 (b) (4) (A) (i) of the 1939 Code and section 613 (a) and (b) (5) (A) of the 1954 Code provide that the percentage depletion for sand and gravel, etc., shall be 5 per cent of the gross income from the property.

The respondent contends that because the Fair Oaks property had previously been dredge mined for gold by Natomas Company prior to the granting of any lease to petitioner and in the dredge mining operation the aggregates (rock, sand, and gravel) had been disturbed, that is, picked up and then dumped back on the land after the gold, if any, had been extracted, the aggregates thereby lost their status as "natural deposits" and acquired the status of dumps or tailings, and were no longer minerals "in place"[1] so as to qualify for a percentage depletion allowance. In support of this contention, the respondent cites *Atlas Milling Co.* v. *Jones*, 115 F. 2d 61 (C. A. 10, 1940), and *Consolidated Chol. G. & S. M. Co.* v. *Commissioner*, 133 F. 2d 440 (C. A. 9, 1943).

We do not think the instant case is controlled by the cases cited by the respondent. In those cases there actually were tailings or dump piles of ores which were held not to constitute "mines" or "other natural deposits" as those terms are used in sections 23 (m) and 611 (a), *supra*.

In *Atlas Milling Co.* v. *Jones*, *supra*, the Tenth Circuit, in its opinion, said:

---

[1] Sec. 39.23 (m)–1 (b) and (d) of Regulations 118 provides that the deduction for depletion provided for in the statute shall be allowed to the owner of an economic interest in "mineral deposits" which in the regulations are defined as "minerals in place." The regulations also provide that "[t]he term 'minerals' includes * * * crushed stone * * * gravel * * * sand."

Mining connotes the removal of minerals from a natural deposit. It does not embrace the re-working of mineral dumps artificially deposited from the residue remaining after the ore has been milled and concentrates removed therefrom.

The respondent in the instant case considers the aggregates on the Fair Oaks property as being in the same category as "mineral dumps artificially deposited from the residue" remaining after the Natomas Company had dredged the Fair Oaks property for gold. We think there might be some reason for the respondent's contention if the property was being reworked for gold but since the property had never been worked for aggregates, it does not seem reasonable to say that such aggregates were in the nature of "mineral dumps artificially deposited from the residue." In the *Atlas Milling Co.* case, the mineral was mined and removed to the mill where it was processed and the ore extracted. The residue was dumped and it was this residue which was acquired by the taxpayer in that case and reworked by a more modern process. The court held that such residue was not a mine and the reprocessing of it was not the working of a mine and pointed out the fact that the taxpayer there had no interest in the mine from which the ore had originally been taken. The petitioner in the *Consolidated Chollar Gould* case, *supra*, had claimed percentage depletion "from the extraction of gold by the petitioner from certain dumps consisting of rocks and ore material which had never been milled or processed in any way but which had been deposited upon lands owned by the petitioner [from mines not located on such lands] many years prior to the acquisition of said lands by the petitioner." In holding that the petitioner there was not entitled to depletion, the Ninth Circuit in its opinion said:

We agree with the Board that rocks and ore material, unworked other than in the fracturing and crushing incident to its removal from a mine, dumped from mines not owned by petitioner upon land not then owned but subsequently acquired by petitioner are not within the classification of "mines, * * * and * * * *other natural deposits.*" It is a rational interpretation of Sec. 23 (m) that the word "mines" is included in the concluding general classification of "natural deposits." If the dumps could be regarded as a mine, they are made by man and not by nature.

In the instant case there is nothing that resembles a dump or residue remaining after the ore has been milled and the concentrates removed therefrom. The aggregates on the Fair Oaks property cover an extended area southward from the banks of the American River and are the identical aggregates which were placed in the area by nature, the only difference being that petitioner's predecessor in interest operated by dredge on the deposit as it existed, picking up the sand and gravel, extracting the gold therefrom, and dumping the sand and gravel, minus the gold, in substantially the same place where it had picked it up. There has been no prior mining of the Fair Oaks property for the purpose of extracting aggregates and there has been

no change in the size or form of the aggregates. When Natomas Company completed its process they were the identical aggregates which existed when the process had been commenced. Petitioner leased the Fair Oaks property and worked the identical deposit for aggregates for the first time and in the place where the sand and gravel had been originally laid down by nature. The fact that, in extracting the gold, the sand and gravel had been stirred up does not warrant respondent's taking the position that petitioner was not working a natural deposit in place or that petitioner did not have an economic interest in the very property from which the deposit was being extracted. In our opinion, the rock, sand, and gravel recovered by petitioner from the Fair Oaks property were from "natural deposits" and constituted "minerals in place" as those terms are used in the statutes and regulations previously cited.

In conclusion, we hold that the respondent erred in disallowing depletion claimed by petitioner on the Fair Oaks property.

Reviewed by the Court.

*Decision will be entered under Rule 50.*