## KENNEDY MINING AND MILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99507. Promulgated February 14, 1941.

*Henry D. Costigan, Esq.*, for the petitioner.
*Harry R. Horrow, Esq.*, for the respondent.

618

OPINION.

OPPER: Petitioner since prior to March 1, 1913, has been the proprietor and operator of a gold mine. For many years antecedent to 1932 its practice had been to accumulate the tailings or refuse consequent upon its extraction process in a surface deposit. During the two taxable years which confront us, an improved metallurgical process was being applied to the accumulated tailings with a consequent addition to petitioner's gross and net income. Prior to 1934 petitioner had claimed depletion deductions on the unit basis but in that year elected percentage depletion, which was the method used by it for computing deductions in the instant taxable years. The issue, said to be one of first impression, is whether under such circumstances, within the provisions of the Revenue Acts of 1934 and 1936, section 114 (b) (4),[1] depletion based upon the income so received by petitioner from the sale of mineral from the tailings deposit may be deducted by it.

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. \* \* \*

In order to test the scope of respondent's grounds for rejection of the depletion allowance, we shall first assume contrary to what is shown that petitioner's method of deducting depletion, from its inception, was the percentage method. Such a deduction involves the prerequisites not only of a depletable asset and its exhaustion but of the existence of income therefrom; and the amount of the depletion is computed in the first instance and limited in the second by the size of the gross income from the property and of the taxpayer's net income therefrom, respectively. Thus if, due to petitioner's methods of operation, either the gross proceeds or the net income, or both, were a smaller sum in any year, its depletion allowable in that year would have been proportionally reduced. And it is recognized by both parties that the mere extraction and actual depletion of mineral property does not either entitle the owner to depletion at that time nor prevent him from benefiting by it later when the ultimate step—recovery of income from the property—is taken. *Inspiration Consolidated Copper Co.*, 11 B. T. A. 1425; *National Petroleum & Refining Co.*, 28 B. T. A. 569. It seems to us necessarily to follow that this would be so whether the process of extraction were completed but the product resulting remained undisposed of until later years; or, as occurred in petitioner's case, the process of extraction fell into two steps, was partially completed and brought about partial sales in one year, and the postponed and refined process of extraction made possible further sales in a subsequent year.

If this would have been the case and if petitioner would be entitled to the depletion claimed, had it taken percentage depletion from the beginning, it would appear that respondent's objection limits itself to two considerations which are the result of the change in petitioner's claim of depletion occurring in the year prior to those before us. These considerations are, first, that by this change from unit to percentage depletion, petitioner will obtain a benefit which it could not have had, had it remained on the unit basis; and, second, that such a procedure might in some other case permit the recovery by a taxpayer of more than his investment or other depletable basis. The first consideration seems to us to be irrelevant, for in granting to taxpayers the privilege of electing the method of depletion to be adopted, which Congress conferred by the 1934 Act,[2] no condition

---

[2] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(b) BASIS FOR DEPLETION.—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—* * * A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. * * *

was imposed preventing the exercise of the election for any such reason as that it constituted a change from a previous method, or that it would offer a greater benefit than would otherwise exist. It was to be assumed that taxpayers would elect that method which would effect the most beneficial deduction; and respondent himself does not extract from the legislation any comparable condition of consistency. Regulations 86 and 94, art. 23 (m)-5. If, therefore, petitioner's change to the percentage basis was required in order to confer upon it the benefit it here seeks, that would still fall short of any inhibition against its use of the method selected.

Nor does the second consideration appear to us to be more persuasive. It has been recognized without qualification that percentage depletion has no relation to cost, value, or recoverable basis. See, e. g., I. T. 2327, VI-1 C. B. 18. While broadly and generally designed to permit a taxpayer to recoup by way of depletion its investment in mineral property, percentage depletion is concerned only with and calculable only by the income received in the year in which the depletion is claimed. It can not but be evident that such a computation will have no specific connection with amounts which any taxpayer has actually invested or might otherwise be able to recover from the capital value of mining property. See *Commissioner* v. *Elliott Petroleum Corporation* (C. C. A., 9th Cir.), 82 Fed. (2d) 193. To say, therefore, as respondent does, that this allowance must be rejected because theoretically it might return an amount greater than the figure originally adopted for the mineral content of the ore from which the tailings emerged would appear to be a fallacious conclusion based upon a premise which may or may not be true, but in either event is immaterial. Even this, however, is a length to which we need not extend the present opinion, since under the record before us it appears to be conceded that this petitioner, granting it the allowances claimed, will still fall short of recovering the originally computed basis.

Nor is it of any greater consequence that some of the tailings may have been the residue of ores removed from the mine at a time when no percentage depletion was allowable to petitioner. For the time of receipt of the income determines not only the year for which percentage depletion is to be deducted, but the currently applicable law which is to be invoked. *Crews* v. *Commissioner* (C. C. A., 10th Cir.), 89 Fed. (2d) 412; *National Petroleum & Refining Co., supra.*

We are of the opinion, therefore, that under the percentage system petitioner did not exhaust its right to depletion with respect to any of the product of its mine until all of the income from that product had been received; that it was entitled to compute that depletion upon the gross and net income from the property, including such amounts

as it received in later years through improvements in the process of extracting ores, all of which were the product of its own mining property; and that the facts that such a result could not be reached under the unit or some other method and that petitioner's adoption of the method which does permit the deduction was a change from its previous method are immaterial. Both are options freely granted by Congress. If they inequitably discriminate in favor of owners of mineral properties, that is a situation which only Congress can remedy.

For reasons which will now appear to be obvious, cases cited by respondent are inapplicable. In *Atlas Milling Co.* v. *Jones* (C. C. A., 10th Cir.), 115 Fed. (2d) 61, both the District Court, 29 Fed. Supp. 942, and the Circuit Court of Appeals emphasized that they did not purport to pass upon a situation where the tailings deposit remained the property, and the income therefrom remained the income, of the owner of the mine from which they had originally been extracted. Granting that a tailings deposit is not a mine as the court there held, it does not follow, of course, that its contents are not the product of the mining property, that minerals extracted therefrom did not have their origin in the mine, or, as respondent argues, that income from the sale of such minerals when ultimately recovered is not income from the mining property. See also *Carl M. Britt*, 43 B. T. A. 254.

The difficulty in the *Atlas* and *Britt* cases, that the taxpayer there was not the owner of the mining property and hence had had no original depletable interest in the minerals in place, can not disturb us here. *Helvering* v. *Bankline Oil Co.*, 303 U. S. 362; *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372; *Darby-Lynde Co.* v. *Alexander* (C. C. A., 10th Cir.), 51 Fed. (2d) 56; certiorari denied, 284 U. S. 666; *Palmer* v. *Bender*, 287 U. S. 551; and *Consumers Natural Gas Co.*, 30 B. T. A. 1263; affd. (C. C. A., 2d Cir.), 78 Fed. (2d) 161; certiorari denied, 296 U. S. 634, are inapposite for a similar reason. The economic interest of this petitioner in the tailings and in the minerals to be extracted therefrom was identical with the interest it had maintained through its ownership of the mine from beginning to end of the extractive process; and when it finally received the proceeds of the minerals contained in the tailings it received income from the contents of the mine to exactly the same extent as the income it had previously received from the earlier and more rudimentary refining process. It follows that respondent's disallowance of petitioner's claim was error and should be reversed.

*Decision will be entered under Rule 50.*