**COMMISSIONER OF INTERNAL REVENUE v. KENNEDY MINING & MILLING CO.**

**No. 9862.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 4, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Helen R. Carloss, Joseph M. Jones, and Arthur Armstrong, Sp. Assts. to the Atty. Gen., for petitioner.

McCutchen, Olney, Mannon & Greene, F. F. Thomas, Jr., and Henry D. Costigan, all of San Francisco, Cal., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

Respondent, Kennedy Mining & Milling Company, a California corporation (hereafter called the taxpayer), is and has been since prior to March 1, 1913, the owner of a gold mine in Amador County, California. In its income and excess profits tax returns for 1935 and 1936, the taxpayer, in computing its net income, claimed deductions for depletion of its mine. Petitioner, the Commissioner of Internal Revenue, disallowed part of the deduction claimed for 1935 and all of the deduction claimed for 1936 and, in consequence of such disallowance, determined that there were deficiencies in respect of the taxpayer's income and excess profits taxes for said years. The taxpayer petitioned the Board of Tax Appeals for redetermination. The Board decided[1] that the deductions should have been allowed as claimed, and that consequently there was no

---

[1] 43 B.T.A. 617.

deficiency. The Commissioner seeks reversal.

Section 23(m) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 23(m), provides that, in computing net income, there shall be allowed as a deduction: "In the case of mines * * * a reasonable allowance for depletion." Section 114(b)(4) of the Act, 26 U.S.C.A. Int.Rev.Code, § 114(b)(4), provides: "The allowance for depletion under section 23(m) shall be * * * in the case of metal mines, 15 per centum * * * of the gross income from the property during the taxable year * · * *. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property."

The Board found that the taxpayer's gross income during 1935 was $665,745.29, of which $266,270.87 was from sales of gold extracted from newly mined ores and $399,-474.42 was from sales of gold extracted from tailings;[2] that the taxpayer's net income during 1935 (computed without allowance for depletion) was $255,162.66, all of which was from sales of gold extracted from tailings;[3] that the taxpayer's gross income during 1936 was $687,079.59, of which $315,639.50 was from sales of gold extracted from newly mined ores and $371,-440.09 was from sales of gold extracted from tailings; that the taxpayer's net income during 1936 (computed without allowance for depletion) was $61,662.39, all of which was from sales of gold extracted from tailings;[4] and that all ores and tailings mentioned were from the taxpayer's mine. These findings are not challenged.

The Board held that all income of the taxpayer during 1935 and 1936, whether from newly mined ores or from tailings, was income from the mine, and that, therefore, the taxpayer was entitled to deduct for depletion 15% of $665,745.29 [5] for 1935 and 50% of $61,662.39 [6] for 1936. The Commissioner contends that only so much of the taxpayer's income as was derived from newly mined ores was income from the mine; and that, since no net income was so derived,[7] no deduction for depletion was allowable.

■ The Commissioner's contention must be rejected. The tailings from which the taxpayer derived part of its gross income and all of its net income during 1935 and 1936 were ores.[8] They were ores from the taxpayer's mine, just as were the newly mined ores which the taxpayer treated in 1935 and 1936. Income derived from the ores called tailings, as well as that derived from the newly mined ores, was income from the mine.

It is true, but not material, that the ores called tailings were mined prior to 1935. The mining of ores and the receipt of income therefrom are seldom, if ever, simultaneous. The two events are usually months apart and not infrequently years apart. Thus income from a mine during a taxable year may, and usually does, include income from ores mined prior to that year.

Nor is it material that these ores (now called tailings) were, prior to 1935, subjected to treatment whereby part of their gold content was removed. The ores so treated remained after such treatment, as they were before, the property of the taxpayer and were thereafter, as theretofore, ores from the taxpayer's mine. Income derived from their subsequent treatment was income from the mine, just as was that derived from their first treatment.

■ It is likewise immaterial that the subsequent treatment of these ores (in 1935 and 1936) was in a cyanide mill instead of a stamp mill. The right to deduct for depletion of a mine a percentage of the gross or net income therefrom does not depend upon the type of mill used in treating the ores from which such income is derived. Nor is the taxpayer's right to the deductions here claimed affected by the fact that, prior to 1934, it claimed and was allowed deductions for "unit" depletion in accordance with Revenue Acts then in effect.

---

[2] Ores which previously had undergone treatment whereby some, but not all, of their gold content had been removed.

[3] The Board found that, considering the taxpayer's treatment of newly mined ores and its treatment of tailings as distinct operations, the former resulted in a net loss of $1,003.78 in 1935 and a net loss of $84,233.75 in 1936, whereas the latter yielded net income of $256,166.44 in 1935 and $145,896.14 in 1936.

[4] See footnote 3.

[5] In other words, 15% of the gross income from the mine, 15% of the gross being less than 50% of the net.

[6] In other words, 50% of the net income from the mine, 50% of the net being less than 15% of the gross.

[7] See footnote 3.

[8] See footnote 2.

Commissioner v. Elliott Petroleum Corp., 9 Cir., 82 F.2d 193.

Atlas Milling Co. v. Jones, 10 Cir., 115 F.2d 61, cited by the Commissioner, is not in point. The taxpayer in that case was a contractor which had contracted with the owner of a tailings dump to treat the tailings therein for a share of the proceeds. Neither party to the contract owned any mine. The court held, and rightly so, that income resulting from performance of the contract was not income from a mine.

Decision affirmed.