## NEW IDRIA QUICKSILVER MINING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### KLAU MINE, Inc., v. SAME.

### OAT HILL MINE, Inc., v. SAME.

### WILD HORSE QUICKSILVER MINING CO. v. SAME.

#### Nos. 10589–10592.

Circuit Court of Appeals, Ninth Circuit.

Sept. 22, 1944.

Robert M. Searls, of San Francisco, Cal., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewell Key, and Warren F. Wattles, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

Four petitions for review have been consolidated for hearing here. Three of the petitioners are owners and operators of a cinnabar mine or mines. One is a lessee and operator of such mines. In their respective returns of income and excess profits taxes for the years 1939, 1940 and 1941, each petitioner, relying on the statutory definition of gross income, computed percentage depletion on the total amount received from gross sales of mercury (or quicksilver) flasked, and claimed 15 percent of such gross income as a deduction. The Commissioner notified each that "allowable depletion, based on 15 percent of the gross income from the property as defined in law

and regulations, has been determined" in a lesser amount than the taxpayer had computed it, resulting in determination of a deficiency. In each case, the Tax Court sustained the Commissioner's method of computing percentage depletion by deducting from gross income the cost of transporting, furnacing, condensing, cleaning, etc., in amounts agreed upon together with an assumed profit which was determined by applying to the total profits from sales of quicksilver the percentage which the cost of each operation bore to the total cost of all operations involved in getting the quicksilver to market.

The questions for review are whether petitioners correctly computed percentage depletion in rendering their income tax returns for the years in question; whether the petitioner New Idria Quicksilver Mining Company was entitled to deduct percentage depletion on ore mined from certain dumps on its property; and whether petitioner Oat Mill Mining Company was entitled to deduct as an operating expense a certain service charge deposit required by a power company serving electric energy.

At these mines, with the exception of the metal obtained from the dumps on the New Idria Quicksilver Mining Company property, the mercury was obtained from crude cinnabar ore brought to the surface from underground mining operations. The ore in the mine is broken down by blasting, and then sorted. Only the cinnabar ore is hauled to the surface to be crushed into particles of about two inches. The crushed cinnabar ore is carred to furnaces on the property, where the ore is heated to a temperature of 1200 Fahrenheit. The heat disintegrates the ore and drives the quicksilver off in vapors. The quicksilver as released in vapors is drawn by means of suction into a condenser system. The buckets which collect the condensed mercury are emptied on tables, where slack lime is mixed with the product to cleanse it and also to free the quicksilver. After this final step, the mercury is flasked for market.

Experiments have been made over periods of time with different methods of gravity and flotation in order to concentrate the cinnabar ore before furnacing but they were not successful. The evidence is undisputed that there are no mills in the United States which purchase the crude cinnabar ore and there is no market for it.

Section 114(b)(4), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 114, con-

tains the statutory measure of depletion of quicksilver mines:

"§ 114. Basis for depreciation and depletion

\* \* \* \* \* \*

"(b) Basis for depletion

\* \* \* \* \* \*

"(4) Percentage depletion for coal and metal mines and sulphur. The allowance for depletion under section 23(m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the *gross income from the property* during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. \* \* \*" [Italics our own.]

Treasury Regulations 103 interpret Section 114(b)(4) of the Internal Revenue Code:

"Sec. 19.23 (m)-1. Depletion of mines, oil and gas wells, other natural deposits, and timber; depreciation of improvements.—

\* \* \* \* \* \*

"When used in these sections (19.23(m)-1 to 19.23(m)-28, inclusive) covering depletion and depreciation—

\* \* \* \* \* \*

"(f) 'Gross income from the property' as used in section 114(b)(3) and (4) and sections 19.23(m)-1 to 19.23(m)-28, inclusive, means the amount for which the taxpayer sells the crude mineral product of the property in the immediate vicinity of the mine or well, but, if the product is transported or processed (other than by the processes excepted below) before sale, it means the representative market or field price (as of the date of sale) of crude mineral product of like kind and grade before such transporting or processing. If there is no such representative market or field price (as of the date of sale), then there shall be used in lieu thereof the representative market or field price of the first marketable product resulting from any process or processes (or, if the product in its crude state is merely transported, the price for which sold) minus the costs and proportionate profits attributable to the transportation and the processes not listed below. The processes excepted are as follows:

\* \* \* \* \* \*

"(4) In the case of lead, zinc, copper, gold, or silver ores and ores which are not customarily sold in the form of the crude mineral product—crushing, concentrating (by gravity or flotation), and *other processes to the extent to which they do not beneficiate the product in greater degree* (in relation to the crude mineral product on the one hand and the refined product on the other) *than crushing and concentrating* (by gravity or flotation)." [Italics our own.]

Neither the statute nor the regulations mention cinnabar ore, mercury or quicksilver. The petitioners contend that the Regulations intend there shall be no deduction from gross income for the cost of such processes as would bring a non-salable crude mineral to the first stage at which it can be sold. There is no market for the crude cinnabar ore; out of every ton of crude cinnabar ore transported to the surface, 1995 pounds are rock having no value whatever. No salable product is produced by crushing; concentration has proved uneconomical and is never used; the beneficiation which takes place in the rotary furnace and condensing system is not legally distinguishable from the preceding processes of mining and crushing. The petitioners contend the correct basis for computing depletion is the gross sales of the mercury in flasks as this is the first marketable product. The Tax Court relies strongly on Commissioner of Internal Revenue v. Winslow, 1 Cir., 113 F.2d 418, 133 A.L.R. 405, which fails to support the Government's position.

Much consideration has been devoted to the history of what Congress intended in enacting Section 114(b)(4). We submit that Congress by the 1943 Revenue Act, which is made retroactive, made clear its original intention that the processes to be excepted in arriving at the first marketable product from quicksilver ores should include the furnacing of the same.

Section 124, Revenue Act of 1943, 26 U. S.C.A. Int.Rev.Acts, provides:

"(a) In general. So much of section 114(b)(4) (relating to percentage depletion for certain minerals) as precedes the second sentence thereof is amended to read as follows:

\* \* \* \* \* \*

"(c) Definition of gross income from the property. Section 114(b)(4) is amended by adding at the end thereof the following:

" '(B) Definition of gross income from property. As used in this paragraph the term "gross income from the property" means the gross income from mining. The term "mining", as used herein, shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. The term "ordinary treatment processes", as used herein, shall include the following: * * * and (iv) in the case of lead, zinc, copper, gold, silver, or fluorspar ores, potash, and ores which are not customarily sold in the form of the crude mineral product—crushing, grinding, and beneficiation by concentration (gravity, flotation, amalgamation, electrostatic, or magnetic), cyanidation, leaching, crystallization, precipitation (but not including as an ordinary treatment process electrolytic deposition, roasting, thermal and electric smelting, or refining), *or by substantially equivalent processes or combination of processes used in the separation or extraction of the product or products from the ore, including the furnacing of quicksilver ores.' "* [Italics our own.]

We believe the interpretation of the regulation by the Commissioner and the Tax Court is not in harmony with the statutes and the intention of the regulation.

█ The second question for determination is whether the New Idria Quicksilver Mining Company was entitled to claim percentage depletion on income derived from mining dumps on its land. The ore in the dumps has been milled years previously but with the improved furnacing process, it was possible to salvage some of the ore. The dumps had always been a part of the land and no depletion had ever been claimed. This court in Commissioner of Internal Revenue v. Kennedy Mining & Milling Co., 9 Cir., 125 F.2d 399, 400, said that "tailings * * * were ores. They were ores from the taxpayer's mine, just as were the newly mined ores." The Tax Court failed to distinguish the instant case and the Kennedy case. There is no legal distinction between the rights of the successor in interest and the rights of the original owner with respect to depletion claimed. See also Consolidated Collar, Gould & Savage Mining Co. v. Commissioner of Internal Revenue, 9 Cir., 133 F. 2d 440.

█ The final question before this court is whether the Oat Hill Mine Company was entitled to deduct in its tax return the payment made to the Pacific Gas and Electric Company for power service. Tax Regulations entitle the taxpayer to deduct from gross income expenditures incurred in operating its property which do not represent the acquisition of any capital item. The expenditure made by the Oat Hill Mine, Inc., was an advance payment so the power company would install a transmission line to the petitioner's property. The evidence was that the mine had a prospective three year operation. The Oat Hill Mine itself was merely a sublessee of the property. It is our opinion that the operating expense here should have been prorated over the probable life of the operation.

Reversed accordingly.