**CHICAGO MINES CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**LONDON EXTENSION MINING CO. v. SAME (two cases).**

Nos. 3508–3510.

Circuit Court of Appeals, Tenth Circuit.

Nov. 6, 1947.

Rehearing Denied Jan. 8, 1948.

Frazer Arnold, of Denver, Colo. (Charles Kentor and Arnold Weinberger, both of Denver, Colo., on the brief), for petitioners.

Hilbert P. Zarky, of Washington, D. C. (Theron L. Caudle, Sewall Key, and Helen R. Carloss, of Washington, D. C., on the brief), for respondent.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

These three appeals seek a review of the decisions of the Tax Court with respect to income taxes of the petitioners. A common question in these appeals is whether petitioners were entitled to the allowance of deduction of income for depletion in connection with the processing of low-grade ore in a dump. The dump in question resulted from mining operations in the Amerincan, Fraction, Huron and Ibex lode mining claims. These claims were contiguous and were collectively known as the American Mine. London Extension Mining Company, herein referred to as London, owned an undivided one-half interest in all the mining claims. A group of individuals referred to as the Ellis heirs owned the other one-half interest in the American claim, and London Mines and Milling Company [1] owned the other undivided one-half interest in the Fraction, Huron and Ibex claims. Chicago Mines Company was a wholly-owned subsidiary of London.

Amer Mining Company, a Colorado corporation, had a lease from the owners of these mining claims to carry on mining operations and extract ore therefrom. It created the dump in question. From 1930, to May, 1940, it operated the mine under its lease and shipped the high-grade ore and placed the resulting waste material, together with the low-grade ore therein, upon the surface of the ground, thereby creating the American dump. A greater portion of this dump was placed upon the surface of the Fraction claim. Smaller portions thereof were placed upon the American and Huron claims. By successive assignments, London acquired Amer's lease about June 7, 1940. On June 10, 1940, London entered into a lease with its affiliate, Chicago, giving it the right to work the dump and mill ores which could be sorted and processed at a profit. London was to receive a royalty of twenty per cent of the net smelter returns. Acting under this lease, Chicago worked the dump until October 8, 1940, when it was dissolved. From October 8, 1940, to the end of the year, London itself worked the dump. From June 7, 1940, to the end of that year, London also carried on underground operations in the mine, part of the time under lease from the Ellis heirs and part of the time under the Colorado Co-owner Statute, 3 Colorado Statutes Annotated, c. 92, §§ 8–16.

In its income tax return for the year of June, 1940, to May 31, 1941, Chicago claimed percentage deduction for depletion on account of its working of the dump. For the same period of time, London also claimed percentage deduction for depletion, based upon the amount it received from Chicago as royalty, plus the amount which it received from its own working of the dump. London also claimed the right to treat its underground working of the mine and its working of the dump as one integrated operation in taking depletion allowance for the time in question. Under the conclusions we have reached as to the main question, it will not be necessary to resolve this last point.

In determining income tax liability, the taxpayer has no fundamental legal

---

[1] London Mines and Milling Company have no interrelationship with London.

right to deductions from gross income. All such deductions are a matter of legislative grace.[2] The right to take deduction must be found in congressional legislative enactments, and one claiming such a right must bring himself clearly and strictly within the exemption provisions of the Statute.[3]

Petitioners claimed the right to depletion allowance under the provision of Section 23(m) of the Internal Revenue Code, 26 U. S.C.A. Int.Rev.Code, § 23(m). The pertinent part of this section is as follows:

"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion * * *."

The precise question is, is a dump of discarded waste material and low-grade ore, placed upon the surface of the earth and resulting from mining operations, a mine under Section 23(m) with respect to which depletion may be taken by one who subsequently works the dump?

■■■ A "mine" is an excavation in the earth from which minerals are removed by digging or other mining processes. In its broader sense, it is understood to mean the vein lode or deposit of minerals.[4] This seems to be the sense in which the term "mine" is used in Section 23(m). The language employed is "Mines, oil and gas wells, *other natural deposits * * *.*"[5] Mining thus connotes the removal of minerals from a natural deposit and does not include the reworking of mineral dumps from the surface of the earth artificially created and resulting from mining operations. Tailings from a mine, consisting of waste material and low-grade ore placed upon the surface of land, become personal property, and the dump in a true sense does not become a mine. We adhere to what we said in the Atlas case [115 F.2d 63] that, "The word 'mines' as used in paragraph 23(m) * * * is limited to natural deposits and does not include a tailings dump deposited on the surface of land, consisting of the residue of ore that has been severed and milled."[6]

It may be conceded, without so deciding, that an operator of a mine, who temporarily places ores in a dump with a present thought and intent to mill them at a subsequent time, would be entitled to depletion allowance even though the operation was completed in a subsequent year. Under such circumstances, he would be allowed depletion deduction, if at all, because the final operation was an integrated part of the original mining operation and did not, therefore, constitute the reworkings of the tailings in a dump as in this case.

Petitioners rely heavily for support of their position upon two cases by the Ninth Circuit; Commissioner v. Kennedy Mining & Milling Company, 125 F.2d 399, and New Idria Quicksilver Mining Co. v. Commissioner, 144 F.2d 918. In the Kennedy case, the Ninth Circuit affirmed the decision of the Tax Court upholding the right of a taxpayer working a dump, created in prior years, to depletion allowance on income from the dump. In a subsequent case, Consolidated Chollar Gould & Savage Mining Co. v. Commissioner, 133 F.2d 440, 441, the Ninth Circuit held squarely that a dump of tailings and low-grade ore, resulting from mining operations, was not a mine, and that

---

[2] Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L. Ed. 907; Atlas Milling Co. v. Jones, 10 Cir., 115 F.2d 61; Security First National Bank of Los Angeles v. Welch, 9 Cir., 92 F.2d 357.

[3] Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127; Deputy v. Du Pont, 308 U.S. 488, 60 S. Ct. 363, 84 L.Ed. 416; Commodore Mining Co. v. Commissioner, 10 Cir., 111 F.2d 131; Knight-Campbell Music Co. v. Commissioner, 10 Cir., 155 F.2d 837.

[4] See Atlas Milling Company v. Jones, 10 Cir., 115 F.2d 61, and cases there cited.

[5] Emphasis supplied.

[6] In South Utah Mines & Smelters v. Beaver County, 262 U.S. 325, at page 332, 43 S.Ct. 577, 579, 67 L.Ed. 1004, the court said:
"The tailings, severed and removed from the mining claims, changed in character, placed on other and separate lands and having an ascertained and adjudicated value of their own, in our opinion, constituted a unit of property entirely apart from the mine from which they had been taken. * * * The plaintiff, therefore, was subject to taxation upon their value, but not as a mine, since that implies something capable of being mined which this loose and homogeneous deposit obviously was not."

one working such a dump was not entitled to depletion allowance. In reaching this conclusion and reconciling this decision with its decision in the Kennedy case, the court did not rest its decision on the ground that in the Kennedy case the dump was processed by the owners of the mine who had also carried on the mining operations and created the dump as distinguished from a claimant, who, subsequently to the creation of the dump, acquired it and then worked it.

Concerning the philosophy of the Kennedy case, the court, in the Chollar case, said:

"There we held the depletion deduction allowable because the recovery of mineral was from tailings of partially worked ore from a mine and mill owned by a taxpayer, deposited on taxpayer's land adjacent to the mine and mill from which they came, and hence the recovery was a mere continuation and completion of the processing of mineral extraction begun in the removal of the deposited material from the mine to the tailing dump."

In the New Idria case, the court, without further amplification of the doctrine of the Kennedy case, merely followed its decision in that case. Our analysis of these decisions by the Ninth Circuit leads us to conclude that it adheres to the principle that a taxpayer, working a dump, may take depletion allowances only in those cases in which the operation is an integrated step in a mining operation, and which is the final step in the process which had its beginning when the ore was removed from the original vein. [7]

Petitioners contend that the Atlas case is bottomed upon the factual situation that Atlas had no ownership or interest in the mine, and no part in the creation of the dump. But that decision was pitched squarely on the proposition that a dump, as such, was not a mine, and the opinion on the petition for rehearing did not hold to the contrary. All we said there, when that proposition was urged upon us, was that that question was not before us and we were, therefore, not concerned with whether the life tenant or remainderman would be entitled to a depletion allowance.

 The further contention is made that while Chicago was nominally a lessee of London in milling the materials in the dump, it was in effect merely the alter ego of London, and that the separate identity of the two corporations should be disregarded and that the case should be treated as though London itself had processed all the materials in the dump. Having reached the conclusion that the dump in this case was not a mine within the meaning of Section 23(m) and that no depletion deduction was allowable from income resulting from working the dump, it becomes unnecessary to pass upon this question.

Petitioners also rely for support of their position upon Section 114(b) (4) (B) as retroactively added by Section 124(c) of the Revenue Act of 1943. Their position seems to be that this latter section broadened the meaning of the term "mines" in Section 23(m) to include the milling and processing of ores in a dump. Section 23 specifies the various deductions which a taxpayer may take. The specific section fixing the right to deduction for depletion is Section 23(m), and so far as material it provides for depletion in the case of "mines". There is nothing in Section 114 (b) which indicates that it was intended to broaden the meaning of the term "mines" in Section 23(m). Section 114(b) deals with the basis for depletion such as cost depletion or percentage depletion. But whichever method was applicable or was selected in the case of "mines," it applied only to "mines" as that term is used in Section 23(m). There are provisions in Section 114(b) (4) (B) defining mining operations to include not merely the extraction of the ore from the mine but also the ordinary treatment process normally applied thereto in order to obtain the commercially

---

[7] The Ninth Circuit also seems to be of the opinion that it is immaterial whether the dump is worked by the owner of the mine who created it or by a successor in interest, because in the New Idria case, 144 F.2d 918, 921, the court said:

"There is no legal distinction between the rights of the successor in interest and the rights of the original owner with respect to depletion claimed."

marketable mineral products. There **is** nothing, however, in this section supporting the contention that the working of a dump, not created with the accompanying intent to work it at a future time, constituted an integrated step in the original mining operation.

Affirmed.