**TURKEY RUN FUELS, Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 15622.

United States District Court
E. D. Pennsylvania.

March 7, 1956.

MacCoy, Evans & Lewis, by Richard W. Ledwith, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

The taxpayer in this case is the owner of coal land in Shenandoah, Schuylkill County, Pennsylvania, and "coal, culm and refuse banks" located thereon, which have been accumulated over many years in the mining of the property. In recent years it has become profitable to extract and sell the coal from the banks.

The taxpayer plaintiff claimed a depletion allowance on the income from the sale of the coal from the refuse banks in its 1948 and 1949 income tax returns. The Commissioner of Internal Revenue disallowed the claims for depletion allowance and assessed deficiencies against the plaintiff. Plaintiff paid the alleged deficiencies and has filed this suit to recover them.

Section 23 of The Internal Revenue Code of 1939, former 26 U.S.C.A. § 23, provides:

"In computing net income there shall be allowed as deductions * *

"(m) Depletion. In the case of mines * * * a reasonable allowance for depletion * * *."

Section 114(b)(4)(A), former 26 U.S. C.A. § 114(b) (4) (A), provides:

"The allowance for depletion under section 23(m) shall be, in the case of coal mines, 5 per centum * * *."

If the plaintiff had removed the coal and refuse from the ground in 1948 and 1949 there would be no question about its right to a depletion allowance even if the refuse had not been separated immediately from the coal. The difficulty here comes from the fact that the mining and the accumulation of the coal and refuse banks on the mining property

started many years ago—in 1870—and the extraction of the coal from the banks started only in recent years, giving the taxpayer aspects of both a miner and a processor of mine wastes.

In 1870 John Gilbert and Peter W. Sheafer were joint owners of the land involved in the present case. In that year they started to mine coal from it. The mining has continued to the present time. Since the death of Gilbert and Sheafer their heirs and the heirs of their heirs have become the successors in the ownership of the land and the refuse banks thereon. On December 1, 1938, the Gilbert and Sheafer heirs conveyed title to the land and the banks to a corporation which they had formed, wholly owned by them, known as West Shenandoah Land Co. When the heirs conveyed the property to the corporation they received no money consideration, but instead each heir received stock in the corporation in exactly the same relative proportion as his ownership in the land had been. Later West Shenandoah Land Co. created a wholly owned subsidiary, Turkey Run Fuels, Inc., plaintiff herein, to which it conveyed title to the property on December 30, 1939. In 1948 and 1949 Turkey Run Fuels, Inc. was still the owner of the property and it still was a wholly owned subsidiary of West Shenandoah Land Co.

In Commissioner of Internal Revenue v. Kennedy Mining & Milling Co., 9 Cir., 1942, 125 F.2d 399 the taxpayer had been the owner and operator of a gold mine since before 1913. Beginning in 1914 and continuing to 1935 the taxpayer deposited mine tailings on its land which resulted from its mining and milling operations. The gold content of the tailings was not considered sufficient to be extracted profitably until 1935. In 1935 the taxpayer because of improved conditions started to rework the tailings to extract the gold therefrom. The Commissioner denied the taxpayer's claim to a depletion allowance, but the Board reversed the Commissioner and allowed the claim for depletion. The Circuit Court of Appeals affirmed, saying, 125 F.2d at page 400:

"The Board held that all income of the taxpayer during 1935 and 1936, whether from newly mined ores or from tailings, was income from the mine, and that, therefore, the taxpayer was entitled to deduct for depletion 15% of $665,745.29 for 1935 and 50% of $61,662.39 for 1936. The Commissioner contends that only so much of the taxpayer's income as was derived from newly mined ores was income from the mine; and that, since no net income was so derived, no deduction for depletion was allowable.

"The Commissioner's contention must be rejected. The tailings from which the taxpayer derived part of its gross income and all of its net income during 1935 and 1936 were ores. They were ores from the taxpayer's mine, just as were the newly mined ores which the taxpayer treated in 1935 and 1936. Income derived from the ores called tailings, as well as that derived from the newly mined ores, was income from the mine.

"It is true, but not material, that the ores called tailings were mined prior to 1935. The mining of ores and the receipt of income therefrom are seldom, if ever, simultaneous. The two events are usually months apart and not infrequently years apart. Thus income from a mine during a taxable year may, and usually does, include income from ores mined prior to that year.

"Nor is it material that these ores (now called tailings) were, prior to 1935, subjected to treatment whereby part of their gold content was removed. The ores so treated remained after such treatment, as they were before, the property of the taxpayer and were thereafter, as theretofore, ores from the taxpayer's mine. Income derived from their subsequent treatment was income from the mine, just as was that derived from their first treatment."

In New Idria Quicksilver Mining Co. v. Commissioner, 9 Cir., 1944, 144 F.2d 918 the taxpayer purchased in 1936 a quicksilver mining property which included mines and ore dumps, the dumps on which had been produced by the mines prior to 1913. The Court of Appeals for the Ninth Circuit sustained the taxpayer's claim for a depletion allowance on the income received from reworking the ore dumps, saying, at page 921: "There is no legal distinction between the rights of the successor in interest and the original owner with respect to the depletion claimed."

The principle established by the Kennedy and New Idria cases seems to be that when a mine owner, who owns both a mine and an ore dump created from products of his mine, extracts mineral from the dump he is entitled to a depletion allowance on the income from the sale of the mineral from the dump and that the length of time in which the dump was created before the extraction of the mineral from it is of no significance. This seems to me to be a sensible rule. Congress has given to mine owners a right to a depletion allowance on the income from their mines. Certainly if they separate the refuse from the mineral as soon as the refuse and the mineral are brought to the surface, the depletion credit must be allowed. If the separation is postponed a year or two years or 50 years or even for 78 years the result would be the same.[1] In my opinion, a mine owner who reworks his ore dumps to extract mineral from them is continuing the mining operation which he started when he first extracted the mineral and refuse from the ground. Congress could have limited the application of depletion allowance to cases in which a mineral is put into the form of its consumption (the mineral after the refuse has been separated from it) promptly after the removal from the ground. It has not done this. I see no reason why the courts should do it.

It has been contended that when a mine owner throws aside a mineral mixed with refuse with the intent of abandoning it as waste[2] it is no longer a part of the mining process if he later changes his mind and removes the once discarded material. With this contention I do not agree. It must be recognized that no matter what a mine owner's intent may be when he discards material which he considers to be waste, he is likely to change his mind and rework the discarded material if conditions change so that it becomes commercially feasible.

The government cites several cases which it contends are contrary to the Kennedy and New Idria cases and which it argues should cause the decision in the present case to go against the taxpayer. It cites Kohinoor Coal Co. v. Commissioner, 3 Cir., 1949, 171 F.2d 880 in which the Court of Appeals for the Third Circuit disallowed a credit for depletion in a case involving certain of the coal and refuse banks involved in the present case. The Kohinoor case, however, is distinguishable in that in it the taxpayer was not the mine owner but a lessee of the banks only and therefore it did not have the "economic interest"[3] in the mine which is necessary to obtain a depletion allowance. A care-

1. Seventy-eight years is the period in the present case since the mining started in 1870 and the coal and refuse banks were reworked during the years 1948 and 1949. The facts are not clear as to what proportion of the banks were accumulated during any particular period, although it is stipulated that the banks were accumulated "principally between 1902 and 1919."

2. In the stipulated facts in the present case there is no evidence as to whether the mine owner intended to discard the material as waste or whether he intended to rework the material if later conditions should make it commercially feasible to do it.

3. See Palmer v. Bender, 1933, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Helvering v. Bankline Oil Co., 1938, 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897; Burton-Sutton Oil Co. v. Commissioner, 1946, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062; Commissioner of Internal Revenue v. Southwest Exploration Co., 76 S.Ct. 395.

ful study of all the cases cited by the government shows that all of its cases are distinguishable because in all of them the taxpayers like the taxpayer in the Kohinoor case did not have the "economic interest" which they needed to entitle them to a depletion allowance.

The principle established by the Kennedy and New Idria cases will be followed and judgment will be entered in favor of the plaintiff and against the defendant.[4]  An order setting forth in detail the exact amount due to the plaintiff will be submitted.

4.  In 1954 the Revenue Code was amended, 26 U.S.C.A. § 613(c) (3), so that on income derived from the reworking of the coal and refuse banks after 1954 the tax- payer under the terms of the amendment will more clearly be entitled to a credit for a depletion allowance.