**TURKEY RUN FUELS, Inc.**

v.

**UNITED STATES of America,**
**Appellant.**

**No. 11973.**

United States Court of Appeals
Third Circuit.

Argued Nov. 9, 1956.

Decided March 14, 1957.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Louise Foster, Attys., Dept. of Justice, Washington, D. C. (W. Wilson White, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for the United States.

Paul W. Bruton, Philadelphia, Pa., (Richard W. Ledwith, Jeremy E. Gold-

stein, MacCoy, Evans & Lewis, Philadelphia, Pa., on the brief), for appellee.

Philip Zimet, New York City (Frederick F. Greenman, Robert H. Haines, Bernard Bressler, Greenman, Shea & Zimet, New York City, on the brief), for Philadelphia & Reading Corp.

Before MARIS and KALODNER, Circuit Judges, and WORTENDYKE, District Judge.

MARIS, Circuit Judge.

This is an appeal by the Government from a judgment in favor of the taxpayer, Turkey Run Fuels, Inc., in a suit brought by the taxpayer in the District Court for the Eastern District of Pennsylvania to recover allegedly excessive income taxes paid pursuant to deficiency assessments for the fiscal years ended August 31, 1948 and August 31, 1949. The facts were stipulated and so far as pertinent are as follows:

The taxpayer is a Pennsylvania corporation and was organized on October 31, 1939. Its stock is all owned by the West Shenandoah Land Co., another Pennsylvania corporation. On December 30, 1939, the latter deeded the property involved here to the taxpayer in return for the taxpayer's stock. The property covered by the deed is the southerly portion of that known as the Moore & Miller Tract. The West Shenandoah Land Co. had acquired that tract from the individual owners on December 1, 1938, in an exchange whereby the owners received stock in the West Shenandoah Land Co. in proportion to their respective interests in the tract. Those owners were then holding the tract as heirs or the trustees for heirs of the two individuals who had acquired title to the tract in 1863 and 1865.

The mining of coal from the Moore & Miller Tract first began in 1870 through the operation of three principal collieries known as West Shenandoah, Turkey Run and Kohinoor. Subsequently, in 1874, the Moore & Miller Tract was leased to the Philadelphia and Reading Coal & Iron Company, and the latter company conducted mining operations thereon un-til 1938 when it instituted bankruptcy proceedings and had its lease cancelled prior to December 1st of that year. From December 1, 1938 until sometime in 1941, the portion of this tract which is now owned by the taxpayer under its deed of December 30, 1939, was not actively operated. During that period the property comprised underground coal workings which had been worked by the prior lessee, coal, culm and refuse banks placed on the surface of the property by the prior lessee, and coal stripping areas. The coal, culm and refuse banks were accumulated prior to October 1932 and principally between 1902 and 1919.

Under a lease executed February 11, 1941, the taxpayer leased to the Kohinoor Coal Company certain coal, culm and refuse banks which had been accumulated during the course of previous mining operations on the property. This lease and the parties are those referred to in the case of Kohinoor Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 1948, 171 F.2d 880, certiorari denied 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732. On November 15, 1945 the same parties entered into a new lease. The taxpayer on January 13, 1947, leased the remaining portion of its property to the Mahanoy Valley Coal Company. On February 10, 1948 that lease was assigned to the Gilberton Coal Company.

During the two taxable years in question all of taxpayer's property was operated under the leases. The lessees were engaged in three operations, namely, the extraction of coal from underground coal workings, the extraction of coal from coal, culm and refuse banks and from coal stripping operations. During each of the taxable years in question the taxpayer received a majority of its coal royalty income from coal extracted from coal, culm and refuse banks by the lessees. The taxpayer, in its income tax returns for these two years, claimed a deduction for percentage depletion based upon 5 percent of the coal royalties earned during the year from coal extracted from the coal, culm and refuse banks as well as from the

underground workings and the stripping operations. The Commissioner allowed the deductions for percentage depletion on royalties due from coal extracted from the underground workings and from the stripping operations but disallowed the depletion deductions claimed on royalties due to coal extracted from the coal, culm and refuse banks. He assessed a deficiency for the taxable year 1948 in the sum of $1,655.58 with interest and for the taxable year 1949 in the sum of $1,603.73 with interest. These deficiencies, which were largely due to the disallowance of a portion of the claimed depletion deductions, were paid on September 3, 1952. Claims for refund of taxes attributable to the disallowed deductions were filed on December 15, 1952, and were disallowed on July 2, 1953. The present suit was instituted on July 31, 1953. On consideration of the stipulated facts the district court concluded that the taxpayer was entitled to the depletion deductions with respect to the coal extracted from the coal, culm and refuse banks which the Commissioner had disallowed. The court accordingly entered judgment in favor of the taxpayer. 139 F.Supp. 43. The present appeal by the Government followed.

The appeal raises the issue whether the district court erred in holding that the taxpayer was entitled to depletion deductions under section 23(m) of the Internal Revenue Code of 1939, 26 U.S. C. § 23(m)[1] from royalties received by the taxpayer for coal extracted from coal, culm and refuse banks on its property which had been created many years before in mining operations by lessees of its predecessors in title.

In Kohinoor Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 1948, 171 F.2d 880, certiorari denied 337 U.S. 924, 69 S.Ct. 1168, this court had before it a similar claim by a lessee of the present taxpayer. Under its lease Kohinoor had merely the right to load, prepare and take away the coal contained in the coal, culm and refuse banks. We held that since Kohinoor had no economic interest in the coal in place, its interest being confined solely to the coal in the culm or refuse banks which had already been extracted from the earth, it was not entitled to the depletion allowance granted with respect to coal mines by the Internal Revenue Code. Our decision was based upon the firmly settled propositions that an economic interest in a mine is a prerequisite to the allowance of a depletion deduction from the income derived therefrom,[2] and that a culm or refuse bank deposited on the surface in the course of mining operations is not itself a mine within the

1. "(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each."

2. See Lynch v. Alworth-Stephens Co., 1925, 267 U.S. 364, 45 S.Ct. 274, 69 L. Ed. 660; Palmer v. Bender, 1933, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Thomas v. Perkins, 1937, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Kirby Petroleum Co. v. Com'r, 1946, 326 U.S. 599, 66 S.Ct. 409, 90 L.Ed. 343; Burton-Sutton Oil Co. v. Com'r, 1946, 328 U.S. 25, 66 S.Ct. 86, 90 L.Ed. 1062; Commissioner of Internal Revenue v. Southwest

meaning of section 23(m) of the Internal Revenue Code of 1939.[3] We fully adhere to our decision in the Kohinoor case and to the legal premises upon which it was based. However, for reasons which will be stated we cannot accept the argument of the Government that the legal rules applied in that case are applicable here.

■ In the present case the taxpayer is the owner of the coal, culm and refuse banks in question, of the land upon which they lie and of the coal mines from which they were extracted. It, therefore, has the economic interest therein which the Internal Revenue Code requires and which Kohinoor as lessee did not have. It is immaterial here that the coal, culm and refuse banks are not themselves mines since the actual mines from which they were extracted are also owned by the taxpayer. The extraction of coal from the banks was but a final step in the process of mining, as defined in section 114(b) (4) of the Internal Revenue Code of 1939, 26 U.S.C. § 114(b) (4) (A, B),[4] which began when the material comprising the banks was extracted from the mines and deposited on the surface. The royalties received by the taxpayer for the coal extracted from the banks therefore constituted income from mining from which the depletion allowance was deductible.

The fact that an interval of time elapsed between the original mining from the earth of the material comprising the banks and the final extraction of the coal from the banks is immaterial. Commissioner of Internal Rev. v. Kennedy Min. & M. Co., 9 Cir. 1942, 125 F. 2d 399. In the case just cited, which involved a depletion claim in connection with gold mining, Judge Mathews said at page 400:

"The Commissioner's contention must be rejected. The tailings from which the taxpayer derived part of its gross income and all of its net income during 1935 and 1936 were ores. They were ores from the taxpayer's mine, just as were the newly mined ores which the taxpayer treated in 1935 and 1936. Income derived from the ores called tailings, as well as that derived from the newly mined ores, was income from the mine.

"It is true, but not material, that the ores called tailings were mined prior to 1935. The mining of ores and the receipt of income therefrom are seldom, if ever, simultaneous. The two events are usually months apart and not infrequently years apart. Thus income from a mine during a taxable year may, and usually does, include income from ores mined prior to that year.

"Nor is it material that these ores (now called tailings) were, prior to 1935, subjected to treatment

Expl. Co., 1956, 350 U.S. 308, 76 S.Ct. 308, 100 L.Ed. 347. Compare Helvering v. Bankline Oil Co., 1938, 303 U.S. 362, 367, 58 S.Ct. 616, 82 L.Ed. 897.

3. South Utah Mines v. Beaver County, 1923, 262 U.S. 325, 332, 43 S.Ct. 577, 67 L.Ed. 1004; Atlas Milling Co. v. Jones, 10 Cir., 1940, 115 F.2d 61, 63, certiorari denied 312 U.S. 686, 61 S.Ct. 613, 85 L.Ed. 1124; Chicago Mines Co. v. Commissioner of Internal Revenue, 10 Cir., 1947, 164 F.2d 785, 787, certiorari denied London Extension Min. Co. v. C. I. R., 333 U.S. 881, 68 S.Ct. 913, 92 L. Ed. 1156.

4. "(4) Percentage depletion for coal * *
"(A) In general. The allowance for depletion under section 23(m) shall be,

in the case of coal mines, 5 per centum, * * * of the gross income from the property during the taxable year, * *
"(B) Definition of gross income from property. As used in this paragraph the term 'gross income from the property' means the gross income from mining. The term 'mining', as used herein, shall be considered to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. The term 'ordinary treatment processes', as used herein, shall include the following: (i) In the case of coal—cleaning, breaking, sizing, and loading for shipment; * * *."

whereby part of their gold content was removed. The ores so treated remained after such treatment, as they were before, the property of the taxpayer and were thereafter, as theretofore, ores from the taxpayer's mine. Income derived from their subsequent treatment was income from the mine, just as was that derived from their first treatment."

We are in accord with these views of our brethren of the Ninth Circuit. The Government, however, urges that it must appear that at the time the operators of the mine brought to the surface the material comprising the banks they had a present intention to extract the coal from the bank material. For this proposition it cites a dictum in Chicago Mines Co. v. Commissioner of Internal Rev., 10 Cir. 1947, 164 F.2d 785, 787, certiorari denied London Exchange Min. Co. v. C. I. R., 333 U.S. 881, 68 S.Ct. 913, 92 L.Ed. 1156. If by this argument it is meant that there must be shown a present intention to proceed with the extraction of the coal from the bank at a definite future time we do not agree. It has long been recognized that the culm and waste banks in the anthracite coal fields of Pennsylvania contain valuable quantities of coal which merely require favorable market conditions to make their extraction economically feasible.[5] It may, therefore, be fairly assumed without proof of a specific subjective intent that the operators of coal mines who deposited this material in banks upon their surface lands did so with the intention of giving it further treatment for the extraction of coal just as soon as and whenever it might prove profitable to them to do so. For certainly one who is operating a mine for profit

intends to make every legitimate profit therefrom which is available to him both immediately and in the future. We think it is clear therefore that the extraction of coal by the taxpayer from these coal, culm and refuse banks was but a continuing step in the original mining operation and that the royalties derived from such extraction accordingly constituted income from mining operations within the meaning of the Internal Revenue Code.

 We are satisfied that this is so even though the taxpayer was not the owner of the mines when the material constituting the banks was deposited. For as the Court of Appeals for the Ninth Circuit said in New Idria Quicksilver Mining Co. v. Commissioner of Internal Rev., 1944, 144 F.2d 918, 921, a case involving this very question, "There is no legal distinction between the rights of the successor in interest and the rights of the original owner with respect to depletion claimed."

The cases of Atlas Milling Co. v. Jones, 10 Cir., 1940, 115 F.2d 61, certiorari denied 312 U.S. 686, 61 S.Ct. 613, 85 L.Ed. 1124; Consolidated Chollar G. & S. M. Co. v. Commissioner of Internal Rev., 9 Cir., 1943, 133 F.2d 440; Chicago Mines Co. v. Commissioner of Internal Rev., 10 Cir., 1947, 164 F.2d 785, and Hoban v. Viley, 9 Cir., 1953, 204 F.2d 459, upon which the Government relies, are clearly distinguishable from the present case since the taxpayers in those cases, just as in the Kohinoor case, were not the owners or successors in interest of the owners of the mines from which the tailings or bank material had come. They, therefore, did not have the requisite economic interest in the mine to support their depletion claims. We think that the same is true of London

5. Daddow and Bannon, Coal, Iron, and Oil; or, The Practical Miner, Pottsville, Pa., 1866, pp. 483-485; Report of Commission appointed to investigate the waste of coal mining, with the view to the utilizing of the waste, Commonwealth of Pennsylvania, Philadelphia, 1893, pp. 4, 37-38, 45-46; Report of the United States Coal Commission, transmitted pursuant to the Act approved September 22, 1922 (Public No. 347), Part II, Anthracite—Detailed Studies, Government Printing Office, Washington, 1925, p. 879; Sisler, Fraser and Ashmead, Anthracite Culm and Silt, Topographic and Geologic Survey Bulletin M-12, Harrisburg, 1928, pp. 55, 56, 69.

Extension Mining Co. v. Commissioner of Internal Revenue, 10 Cir., 1947, 164 F.2d 785, a companion case to the Chicago Mines Co. case. But to the extent that the London case denied a depletion allowance to a taxpayer which had an economic interest in the mine from which the material in the bank had come it is in conflict with the rule of the Kennedy and New Idria cases, with which we are in accord, and we do not follow it.

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge (dissenting).

In Kohinoor Coal Co. v. Commissioner of Internal Revenue, cited by the majority, we unequivocally subscribed to these two propositions:

(1) Coal, culm and refuse banks are not "mines" within the meaning of Section 23(m) of the Internal Revenue Code of 1939 [171 F.2d 885] " * * * because they are not a natural mineral deposit", or otherwise stated, "minerals in place."

(2) Section 114(b) of the 1939 Code, which deals with the basis for depletion, has not broadened the meaning of the term "mines" in Section 23(m) to include the extraction and processing of coal from culm or refuse banks.

The majority adheres to the first proposition but holds to the contrary as to the second.

That that is so is readily apparent upon comparison with what we said in Kohinoor as to Section 114(b) and what the majority has said on that score.

In Kohinoor we said, 171 F.2d at page 885:

"The taxpayer's contention here that Section 114(b) (4) (B) * * * has broadened the meaning of the term 'mines' in Section 23(m) to include the extraction and processing of coal from a culm bank was

also raised in the Chicago Mines case.[1] We are in accord with the ruling there that such a contention cannot be sustained."

"Section 114(b) as amended deals with the *basis* for depletion, and does not come into play unless the taxpayer has an economic interest in a 'mine' or natural deposit within the meaning of Section 23(m), which is defined in Treasury Regulations 111 as 'minerals in place'. In view of the fact that the culm and refuse banks were not a 'mine' within the meaning of Section 23(m) because they are not a natural mineral deposit, there is no occasion to ascertain the basis for depletion."

The majority says:

"The extraction of coal from the banks was but *a final step in the process of* mining, as defined in section 114(b) (4) of the Internal Revenue Code of 1939, 26 U.S.C. § 114(b) (4) (A, B) which began when the material comprising the banks was extracted from the mines and deposited on the surface. The royalties received by the taxpayer for the coal extracted from the banks therefore constituted income from *mining* from which the depletion allowance was deductible." (emphasis supplied)

It must immediately be noted that in the Kohinoor case, 171 F.2d at page 882, we specifically rejected the taxpayer's contention that the provisions of Section 114(b) (4) extended to " * * * *the ordinary treatment processes normally applied by coal mine operators*" and were not confined to "the extraction of ores or minerals from the ground." (emphasis supplied)

The majority premised its view upon these conclusions of law:

(1) "It is immaterial here that the coal, culm and refuse banks are not themselves mines since the

---

1. Chicago Mines Co. v. Commissioner and London Extension Mining Co. v. Commissioner (companion cases), 10 Cir., 1947,

164 F.2d 785, certiorari denied 333 U.S. 881, 68 S.Ct. 913.

actual mines from which they were extracted are also owned by the taxpayer."

(2) "The fact that an interval of time elapsed between the original mining from the earth of the material comprising the banks and the final extraction of the coal from the banks is immaterial."

(3) "It may be fairly assumed without proof of a specific subjective intent that the operators of coal mines who deposited this material in banks upon their surface lands did so with the intention of giving it further treatment for the extraction of coal just as soon as and whenever it might prove profitable for them to do so."

(4) " * * * the extraction of coal by the taxpayer from these coal, culm and refuse banks was but a continuing step in the original mining operation * * * " and that " * * * this is so even though the taxpayer was not the owner of the mines when the material constituting the banks was deposited."

The sum of the majority's position is that culm banks are a "mine" under the 1939 Code if they were deposited from a mine *presently owned* by a taxpayer irrespective of the time lapse between the deposit and the extraction of the coal from the banks and irrespective of the fact that the taxpayer was not the owner of the original mine source at the time the culm banks came into being.

In the instant case the culm banks were all accumulated prior to 1932—*principally between 1902 and 1919*—by the Philadelphia & Reading Coal & Iron Co. which had conducted mining operations under a lease entered into in 1874 (and subsequent renewals) with the then owners. The Philadelphia & Reading was an entity completely independent of control by the lessors. It operated the mines until 1938 when it instituted bankruptcy proceedings and its lease was for that reason terminated.

Between 1938 and 1941 the mining properties were not actively operated nor were the culm banks. In 1938 the heirs of those who had leased the mines to Philadelphia & Reading in 1874 conveyed their interests to the West Shenandoah Land Co. in exchange for its entire capital stock. In 1939 this company conveyed to the taxpayer part if its mining property (here involved) in exchange for its entire capital stock. In 1941 the taxpayer leased to the Kohinoor Coal Company certain of its culm banks (involved in the Kohinoor case) and in 1945 the parties entered into a *new* lease under which Kohinoor was given the right not only to work the culm banks involved in the prior lease but also the right to operate the underground coal workings and to conduct strip mining operations. On January 13, 1947, the taxpayer leased the unleased portion of its mining properties to the Mahanoy Valley Coal Company on terms similar to the 1945 lease to Kohinoor. On February 10, 1948 Mahanoy assigned its lease to the Gilberton Coal Company. During the taxable years involved (September 1, 1947–August 31, 1949) all of the taxpayer's property was operated under the leases cited.

To say that the extraction of coal in 1948 and 1949 from culm banks accumulated between three and four decades earlier (1902 to 1919) by the then lessee, "was but a continuing step in the original mining operation" because "it may be fairly assumed without proof of a specific subjective intent that the operators of coal mines who deposited this material in banks upon their surface lands did so with the intention of giving it further treatment for the extraction of coal" is scarcely justifiable. It disregards these well-settled rules (1) in considering tax questions the courts will look to the substance—the hard realities —and not the shadow, of the situation; (2) tax deductions are permitted as a matter of legislative grace and "do not turn upon general equitable considerations" and the taxpayer must clearly establish that he or it comes within the

deduction specifically authorized by Congress.[2]

In the instant case, under the 1874 and subsequent leases to the Philadelphia & Reading Coal & Iron Co. the then owners of the coal lands here involved had conferred upon their lessees, without reservation, the right to mine these lands and to operate such mines as they deemed proper. They did not reserve to themselves the right to extract coal from culm banks which might be accumulated in the course of the lessee's mining operations and there can consequently be no assumption that they had "a specific subjective intent" to ultimately extract coal from such banks. Indeed the record discloses that the then lessee-operator had an "exclusive" right to work the culm banks which it accumulated.

The taxpayer here was clearly not a successor to the rights of the Philadelphia & Reading. Further, it and the West Shenandoah Land Co. from which it acquired title to the coal lands, are not only separate legal entities for tax purposes but both are also separate from the prior individual owners and the taxpayer cannot rely on any rights, assuming they existed, of prior owners in establishing its claim for depletion. The corporate veil will not be pierced in order to permit invocation of the legislative grace of a deduction in the absence of a clear provision permitting it to be done.[3]

Apart from the considerations mentioned it is difficult to reconcile the majority's professed subscription to our holding in the Kohinoor case that culm banks are not "mines" within the meaning of either Section 23(m) or Section 114(b) (4) (B) of the 1939 Code and its ruling that such banks are "mines" within the latter section in the instant case, particularly in view of the fact that the identical culm banks are involved.

The majority seeks to distinguish the instant case from Kohinoor on the ground that the taxpayer there was merely the lessee of the culm banks and as such had no "economic interest in the coal in place" and it says we premised our disallowance of depletion on the absence of such "economic interest."

I cannot subscribe to that construction of our ruling in the Kohinoor case. We there premised our disposition squarely on the ground that culm banks are not "mines", viz., "minerals in place" within the meaning of Sections 23(m) and 114 (b) (4) (B) of the 1939 Code. In doing so we merely observed that even in the case of a "mine" a taxpayer seeking depletion allowance must have an "economic interest" in it and noted parenthetically that Kohinoor under its then lease had no "economic interest" in the culm banks as to which it claimed depletion. The observation we made on the score of "economic interest" was patently, putting it colloquially, "driving another nail in the coffin" of the taxpayer's contention in view of our holding there that a culm bank is not a "mine" under the 1939 Code.

On the score of our ruling in Kohinoor [171 F.2d 885] that culm banks are not "mines" under the 1939 Code because they are not a "natural mineral deposit" or "minerals in place," the Supreme Court of the United States has time and again ruled that under the 1939 Code and its predecessors, oil, gas or minerals as to which depletion allowance is sought must be "in place" before the owner of an economic interest therein can receive such allowance. The Supreme Court spoke of "ore in place" in United States v. Biwabik Mining Co., 1918, 247 U.S. 116, 123, 38 S.Ct. 462, 464, 62 L.Ed. 1017; "oil in place" in United States v. Ludey, 1927, 274 U.S. 295, 300, 47 S.Ct. 608, 610, 71 L.Ed. 1054; Palmer v. Bender, 1933, 287 U.S. 551,

2. Montana Power Company v. United States of America, 3 Cir., 1956, 232 F. 2d 541, certiorari denied 1956, 352 U.S. 843, 77 S.Ct. 51, 1 L.Ed.2d 59.

3. New Colonial Ice Co. v. Helvering, 1934,

292 U.S. 435, 440, 54 S.Ct. 788, 78 L. Ed. 1348; Deputy v. Dupont, 1940, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Montana Power Company v. United States, supra, note 2.

557, 558, 53 S.Ct. 225, 77 L.Ed. 489; Kirby Petroleum Co. v. Commissioner, 1946, 326 U.S. 599, 603, 606, 66 S.Ct. 409, 90 L.Ed. 343; Burton Sutton Oil Co. v. Commissioner, 1946, 328 U.S. 25, 29, 32, 34, 66 S.Ct. 861, 90 L.Ed. 1062; Commissioner of Int. Rev. v. Southwest Exploration Co., 1956, 350 U.S. 308, 314, 316, 76 S.Ct. 308; "oil in the ground" in Thomas v. Perkins, 1937, 301 U.S. 655, 661, 57 S.Ct. 911, 913, 81 L.Ed. 1324; "wet gas in place" in Helvering v. Bank-line Oil Co., 1938, 303 U.S. 362, 367, 368, 58 S.Ct. 616, 618, 82 L.Ed. 897; and "oil and gas in place" in Helvering v. O'Donnell, 1938, 303 U.S. 370, 371, 372, 58 S.Ct. 619, 620, 82 L.Ed. 903; and Helvering v. Elbe Oil Land Co., 1938, 303 U.S. 372, 375, 58 S.Ct. 621, 82 L.Ed. 904.

It will be observed that in the foregoing reference has repeatedly been made to the provision of the 1939 Code. That identification has been necessary because, although the majority did not advert to it, the Internal Revenue Code of 1954, for the years following its enactment, specfically provides in Section 611 (a), 26 U.S.C. § 611(a) that " * * * the term 'mines' includes deposits of waste or residue, the extraction of ores or minerals from which is treated as mining under section 613(c)." [4]

The changes made in the Internal Revenue Code of 1954 with respect to culm banks are pertinent in the determination of the issue presented in the instant case.

The Committee on Ways and Means, H. Rep. No. 1337, 83rd Cong., 2d Sess., p. 59, 3 U.S.C. Cong. and Adm. News, 1954, pp. 4017, 4085, in its "General Statement" of its Report (accompanying H.R. 8300) relating to the Internal Revenue Code of 1954, specifically stated with respect to Section 613 "Mine Tailings":

"Depletion allowances under present law are allowed with respect to mines and natural deposits. In mining operations frequently residue is accumulated which is currently waste material. Subsequently, technological innovations or changes in conditions of supply and demand may make it commercially feasible to recover the mineral content from that residue. *Present law has been interpreted to deny depletion allowances with respect to minerals produced from such dumps or tailings.*"

"Your committee's bill would *extend percentage depletion* at the appropriate rates to mine owners *for minerals recovered from the residue that had accumulated from their mine.* It is in the public interest to encourage the production of minerals from these accumulations as well as from the mine itself." (emphasis supplied)

The same House Report in its "Detailed Discussion of the Technical Provisions of the Bill', H.Rep. No. 1337, supra, p. A183, 3 U.S.C. Cong. and Adm. News, supra, p. 4323, stated concerning Section 611, "Allowance of deduction for depletion":

"This section is derived from section 23(m) of the 1939 Code. Certain changes in wording and arrangement have been made for the purpose of simplification and consistency *but, with one exception, there has been no substantive change in present law. The term 'mines' is defined to include deposits of waste or residue of mines, the extraction of ores or minerals from which is treated as mining under section 613(c). The effect of this amendment is to extend allowances for depletion to the extraction of ores or minerals from waste or residue of prior mining.*

" * * * Thus, where a mine owner is engaged in the mining and sale of ores or minerals from origi-

---

4. Section 613(c) (3), 26 U.S.C. § 1613(c) (3) provides in part as follows:

"The term 'extraction of the ores or minerals from the ground' includes the extraction by mine owners or operators of ores or minerals from the waste or residue of prior mining."

nal mine workings along with ores or minerals *produced by him from waste thereon,* the gross income from both shall be aggregated in determining the gross income from the property * * * ." (emphasis supplied)

Again, with respect to Section 613, "Percentage Depletion", at p. 185, 3 U.S.C.Cong. and Adm. News, supra, p. 4325, it was stated:

"* * * The term 'extraction of the ores or minerals from the ground' in *present law has been amended* to provide that such term includes the extraction by mine owners or operators of ores or minerals from the waste or residue of *their* prior mining. Thus, a depletion allowance may be permitted when based on the extraction of minerals or ores from waste or residue of mining, such as a tailings dump or a culm bank, *if performed by the mine owner or operator * * * "* (emphasis supplied).

The Senate Finance Committee, S. Rep. 1622, 83rd Cong. 2d Sess., 3 U.S.C. Cong. and Adm. News, 1954, pp. 4621, 4712, in its "General Explanation" of its Report, had this to say with respect to the section in its Bill dealing with "Mine Tailings", Section 613:

"Depletion allowances under present law are allowed with respect to mines and natural deposits. The House and your committee's bill *extends percentage depletion* at the appropriate rates to mine owners *for minerals recovered from the residue* that had accumulated from their mine. The provision does not apply in the case of a purchaser of such waste or residue or to a purchaser of rights thereto." (emphasis supplied)

The same Senate Report in its "Detailed Discussion of the Bill" at p. 329, 3 U.S.C. Cong. and Adm. News, supra, p. 4970, stated with respect to Section 611 "Allowance of deduction for depletion":

"This section corresponds to section 611 of the bill as passed by the House, and is derived from section 23(m) of the 1939 Code. Section 611 of the House bill made certain clerical changes in existing law, but *made no substantive change other than to provide that the term 'mines' includes deposits of waste or residue of mines,* the extraction of ores or minerals from which is treated as mining under section 613(c). *The effect of this provision of the House bill is to extend allowances for depletion to the extraction of ores or minerals from waste or residue of prior mining."* (emphasis supplied)

Again with respect to Section 613, "Percentage depletion", at page 333, S. Rep. 1622, supra, 3 U.S.C. Cong. and Adm. News, supra, p. 4973, it was stated:

"Section 613(c)(3) of the House bill *extended depletion* to deposits of waste or residue of *prior mining* by adding a provision that the term 'extraction of the ores or minerals from the ground' includes the extraction by mine owners or operators of ores or minerals from the waste or residue of prior mining." (emphasis supplied)

It is true, as pointed out by counsel for the taxpayer, that S. Rep. 1622, supra, p. 333, 3 U.S.C. Cong. and Adm. News, 1954, 4621, 4974, states that "No inference can be drawn from the reclassification of certain minerals and other actions as to the meaning of present law." Nevertheless, in view of the fact that the issues are specifically admitted and discussed by the House and Senate Reports, it is permissible and proper to draw such inferences. It is clear from the unambiguous statements in the legislative committee reports that the 1954 Code changed the prior law by incorporating in the definition of "mines" culm banks such as are involved in the instant case and specifically "extended" depletion allowance to culm banks. The Government has correctly summarized the taxpayer's position

with its statement that the taxpayer seeks to have this Court adopt the 1954 provisions in interpreting Section 23(m) and Section 114(b) (4) (B) but the 1954 provisions are not retroactive.

One final comment:

While the 1954 Code makes academic, with respect to the years following its enactment, the issue presented in this appeal, its resolution is of critical importance in the application of the prior revenue laws because of the tremendous scope of culm bank operations prior to 1954.

For the reasons stated I would reverse the judgment of the District Court.